PAUL EMANUEL ELIACIN *v.* STATE OF INDIANA.

[No. 474S87. Filed April 1, 1975.]

*John G. Bunner,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Gary M. Crist,* Deputy Attorney General, for appellee.

GIVAN, C.J.—Appellant was charged by indictment with the offense of second degree murder. A trial by jury resulted in a verdict of guilty as charged. Appellant was sentenced to imprisonment for fifteen (15) to twenty-five (25) years.

The record discloses the following facts: At about 6:00 P.M. on July 16, 1973, Calvin Anderson, Ronald Porter and Leonard Frye were standing in front of 402 Lincoln Avenue in Evansville, Indiana. Appellant approached the 3 men with a pistol in his hand and asked Anderson about some money which he claimed was owed to him. At this point, Appellant fired the pistol into the ground. Appellant continued to ask for the money, stepped back a few feet, raised the pistol and fired again. This shot hit Anderson above the right eye and he collapsed. Anderson was taken to a hospital where he died of the injuries about 10:00 p.m.

The Appellant voluntarily submitted to the custody of the Evansville City Police Department during the evening of July 16, 1973. After being informed of his constitutional rights, Appellant gave and signed a written statement confessing to having shot Anderson. The confession was admitted at trial over Appellant's objection.

During the deputy prosecuting attorney's final argument, Appellant's counsel moved for a mistrial based upon the

deputy prosecutor's statements. The court admonished the jury and overruled the motion for mistrial.

Appellant first claims the trial court erred in admitting into evidence State's Exhibits Nos. 8 and 9, which were a waiver of his constitutional rights and a written confession signed by the Appellant. It is Appellant's position that the trial judge should consider circumstances surrounding the giving of the confession to determine whether it was voluntarily given. Appellant urges that he was only eighteen (18) years old at the time; that he did not understand English adequately; that he did not have the assistance of counsel and that the police were holding his financée for the same offense.

The record indicates that about 10:00 p.m., Appellant walked into the police station. He was taken to Detective Baggerly, who placed him under arrest for assault and battery with intent to kill and advised him of his constitutional rights. At that time Appellant stated that he understood his rights and asked to talk to his fiancée, Miss Gulley, who was being questioned at that time. Appellant was informed that she was unavailable at the moment, but that he could talk to her in a few minutes. While Miss Gulley's statement was being notarized, Detective Baggerly again advised Appellant of his constitutional rights. Appellant signed a waiver and gave his statement. Before signing the statement, he was allowed to see Miss Gulley.

Detective Baggerly testified that Appellant answered questions intelligently and gave no indication that he could not understand the questions. He further testified that no threats or promises had been made to encourage Appellant to confess. It is apparent from the record that the trial court did consider the circumstances surrounding the confession in determining that the confession was voluntarily given.

This Court has repeatedly stated that on appeal we may

not weigh the evidence, but must determine its sufficiency as a matter of law. *Hash* v. *State*, (1973) 259 Ind. 683, 291 N.E.2d 367, 34 Ind. Dec. 635.

Appellant's reliance on *Hall* v. *State*, (1971) 255 Ind. 606, 266 N.E.2d 16, 24 Ind. Dec. 439, for the proposition that the questioning and detention of Miss Gulley made his confession involuntary as a matter of law is not well founded. In *Hall* the police threatened to charge Hall's wife with the same crime with which he had been charged. There the Court stated:

> "[W]hen the threat to so charge and attempt to convict is made by police officers to 'encourage' the appellant to make a full confession, we cannot say as a matter of law that the confession is given freely and voluntarily by the appellant." 255 Ind. at 611.

In the case at bar, however, no threats or promises were made. The evidence of the circumstances surrounding Appellant's confession supports the trial court's determination that the confession was freely and voluntarily given. We therefore hold there was no violation of the Appellant's constitutional rights and that the trial court did not err in permitting the waiver and the statement of the Appellant in evidence.

Appellant next claims the trial court erred in not declaring a mistrial because of statements made by the deputy prosecuting attorney. During his summation to the jury, the deputy prosecuting attorney stated: "This crime is probably one of the most aggravated and unprovoked and merciless crimes I have seen." The statement made by the deputy prosecuting attorney was improper in that it was an attempt to inject his personal experiences into the trial and might cause the jury to give undue credibility and weight to the evidence referred to by the deputy prosecutor. 8(A) I. L. E., *Criminal Law*, § 485. However, immediately after the deputy prosecuting attorney made the objectionable statement, the trial court admonished the jury as follows:

"The jury is now admonished that you are not to consider the remarks of the Deputy Prosecutor, Carl Heldt, telling you that it was your duty to return a verdict of murder. I think all of you understand what your duty is in this case, do you not? Do all of you agree that it is your duty to review the evidence in this case and then reach a decision as to what the man is guilty of? Do all the jurors answer, 'Yes'? (Each juror answered, 'Yes'.) Do all the jurors understand and remember one of the instructions which I gave you preliminarily that the arguments of counsel are not to be considered as evidence in this case? (All jurors said, 'Yes.') And that you could reject arguments or accept them as you saw fit? All of you remember that? (All jurors said, 'Yes.') Is there any juror at this time who feels that it is their duty to bring back a verdict of Second Degree Murder before you retire to the jury room and you review the evidence? (All jurors answered, 'No.') The Court will overrule defendant's motion for a mistrial. Mr. Heldt, you may finish."

Following the conclusion of the deputy prosecuting attorney's argument, the Court again admonished the jury as follows:

"The Court will further admonish you and instruct you that it is your duty to review the evidence and determine whether or not the person is guilty or not guilty. Do you understand that? (All the jurors answered, 'Yes'.) And if you do find him guilty then it is your duty to determine what crime he is guilty of. Do you understand that? (All jurors answered, 'Yes'.) The Court will further explain the degrees of guilt in the event you find him guilty. I did not in no way mean to imply that you were not to decide solely whether or not he was guilty but as to whether or not he was guilty or not guilty."

Considering the admonition of the trial court in conjunction with the evidence produced at the trial, we hold that the statement by the prosecuting attorney, although error, was harmless error. We would further point out that the jury recommended the lighter of the two possible sentences for the crime charged. This, in itself, indicates the jury was not impressed by the prosecutor's statement that this was "one of the most aggravated and unpro-

voked and merciless crimes I have seen." 8(A) I. L. E., *Criminal Law*, § 485, *supra*. We, therefore, hold the trial court did not abuse its discretion in denying Appellant's motion for a mistrial.

For the foregoing reasons, the judgment of the trial court is affirmed.

Arterburn, DeBruler, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 325 N.E.2d 201.