STEVE MCDONALD, GARY SOUTHERTON AND LARRY SOUTHERTON *v.* STATE OF INDIANA.

[No. 2-974A227. Filed April 24, 1975.]

668

*Robert E. Bostwick,* of Wabash, for appellants.

*Theodore L. Sendak,* Attorney General, *Russell W. Sims,* Deputy Attorney General, for appellee.

LYBROOK, J.—Defendants-appellants Steve McDonald (Steve), Gary Southerton (Gary) and Larry Southerton (Larry) appeal from convictions of theft and auto banditry, raising the following issues for review:

(1)  Whether the trial court erred in denying defendants' motions for separate trials.

(2)    Whether references to defendants' past criminal records unduly prejudiced the jury so as to constitute an evidentiary harpoon.

(3)    Whether the convictions for theft were improper due to an alleged error in stating the amount of money stolen.

(4)    Whether the trial court erred in denying defendants' motions for acquittal.

The record reveals that the defendants, accompanied by a juvenile named Miller, were riding in a 1969 Pontiac G.T.O. on the evening of November 17, 1973. Steve was driving, Gary was riding in the front passenger's seat, and Miller and Larry occupied the back seat. Steve drove into a gas station in Wabash, and Miller told the attendant, Richard Dyson, to put $2.00 worth of gasoline in the car. After doing so, Dyson was given a ten dollar bill by Miller as payment. In order to return the eight dollars change, Dyson took a roll of bills from his pocket. At that time, Miller grabbed the roll of bills from Dyson, and shouted "I've got it, let's go!" Dyson reached in the car in an attempt to retrieve the money, but was unsuccessful due to its rapid departure from the station. The tires of the car "squealed" and the rear end "fishtailed" as it sped from the station.

Officer Kirby of the Wabash Police Department observed the manner in which the vehicle left the station and pursued it in an attempt to stop it. During the ensuing chase, speeds in excess of 95-110 miles per hour were reached.

The record reveals that on two occasions during the chase, Steve stopped the car and Larry and Gary got out. When the chase finally ended due to mechanical failure in the getaway car, the police apprehended Miller near the area where the car stalled. The money taken from Dyson was found in Miller's pocket. Later, the three defendants were apprehended and charged with robbery and auto banditry. Following trial by jury, the defendants were found guilty of theft, as a lesser included offense of robbery, and auto banditry. They were sentenced to imprisonment for a period of not less than one nor more than 10 years on the theft convictions, and not less

than one nor more than five years on auto banditry. Miller, in a separate proceeding, was ordered confined to the Indiana Boy's School.

## I.

Initially, defendants assert that the trial court erroneously denied their requests for separate trials. We cannot agree.

It is well settled that an accused charged or indicted jointly with others is not entitled to a separate trial as a matter of right, but the granting thereof rests solely within the sound discretion of the trial judge. *Adams* v. *State* (1970), 254 Ind. 509, 260 N.E.2d 878; *Ware* v. *State* (1963), 243 Ind. 639, 189 N.E.2d 704; *Turner* v. *State* (1972), 258 Ind. 267, 280 N.E.2d 621; *Garrison* v. *State* (1967), 249 Ind. 206, 231 N.E.2d 243. Further, the soundness of the trial court's discretion in granting or denying a motion for separate trials is measured by what actually transpired at the joint trial rather than what was alleged in the motion for separate trials. *Marks* v. *State* (1942), 220 Ind. 9, 40 N.E.2d 108; *Garrison* v. *State, supra.*

Herein, defendants maintain that they were prejudiced by two alleged occurrences at the joint trial which would not have been proper at separate trials: admission of evidence of flight and admission of previous criminal records.

An examination of the transcript reveals, however, that at no place did defendants, jointly or individually, object to the introduction of the evidence of flight as being prejudicial so as to warrant separate and or new trials. They may therefore not now be heard to say that the testimony complained of would have been excluded had there been separate trials. See, *Garrison* v. *State, supra.*

As to defendants' second assertion of prejudice arising from joint trial—admission of previous criminal records—we find no error demonstrated. The record conclusively reveals that references to past criminal records of the defendants were first made by each defendant on direct examination. On cross-examination, the prosecutor

asked each defendant which crime or crimes they were referring to on direct examination. However, when this inquiry was made, the objections of defendants were sustained, and the jury was admonished to disregard the questions. Since an admonition to disregard testimony is presumed to correct any alleged error, *Martin* v. *State* (1974), 261 Ind. 492, 306 N.E.2d 93, we find no error demonstrated under this issue due to defendants' failure to either allege or show that the admonition was not sufficient.

## II.

Secondly, defendants urge that repeated references to their past criminal activities was so cumulative and prejudicial as to constitute an "evidentiary harpoon". We do not agree.

As discussed above, error, if any, in the references by the prosecution was cured by the trial court's admonition to the jury to disregard the questions. However, we feel compelled to comment further upon this issue.

The record conclusively discloses that the defendants, on direct examination opened up the subject of their past criminal records. Although the direct examination was not specific, other than to establish that they were parolees, on cross-examination, the prosecutor sought to expose the specific prior offenses. Regardless of whether the prosecutor's questions were objectionable under the rule of *Ashton* v. *Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210, defendants having opened up the subject of prior criminal conduct on *direct* examination, were in no position to complain. *Hannah* v. *State* (1974), 160 Ind. App. 317, 311 N.E.2d 838; *Martin* v. *State, supra.*

## III.

Thirdly, defendants maintain that their convictions for theft were improper in that the evidence did not prove that the amount of money taken was $105.00. Defendants urge that since $8.00 of the $105.00 was due them as change for their purchase, the amount stolen was only $97.00. They therefore

contend that it was reversible error to deny their motions for directed verdicts of acquittal.

Inasmuch as the theft in this case was theft from the person of Dyson, we find defendants' arguments concerning the value of the property taken misplaced. IC 1971, 35-17-5-12(5), Ind. Ann. Stat. § 10-3039(5) (Burns Supp. 1974) provides:

> "(5)   A person convicted of theft shall be fined in any sum not exceeding five thousand dollars [$5,000] or imprisoned for not less than one [1] year nor more than ten [10] years, or both, and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period *regardless of the monetary value of the stolen property* if:
>
> \* \* \*
>
> (e)   the theft was from the person; or . . ." (Our emphasis.)

Since in the case of theft from the person the value of the property taken is immaterial, we find no error demonstrated under this issue.

## IV.

Finally, defendants contend that the trial court erred in denying their motions for directed verdicts of acquittal. Again, we do not agree.

A directed verdict of acquittal is only proper where there is a total absence of proof on some essential element necessary for conviction, or where the evidence is without conflict and susceptible of but one inference in favor of the accused. *Nelson* v. *State* (1972), 259 Ind. 339, 287 N.E.2d 336.

Defendants' argument in their brief on this issue advances the belief that the totality of the evidence was susceptible of but one inference in favor of the accused. However, as the State points out, the record is replete with evidence which permits inferences in favor of defendants' guilt. It therefore was not reversible error to deny defendants' motions for directed verdicts of acquittal.

No reversible error having been demonstrated, the judgment of the trial court is affirmed.

Affirmed.

Robertson, C.J., and Lowdermilk, J., concur.