KENNETH GILLIAM AND MINNIE BRAXTON *v.* STATE OF INDIANA

[No. 977S707. Filed December 15, 1978.]

*Geoffrey A. Rivers*, of Muncie, for appellant Gilliam, *Alan K. Wilson*, of Muncie, for appellant Braxton.

*Theodore L. Sendak*, Attorney General, *Dennis K. McKinney*, Deputy Attorney General, for appellee.

DeBruler, J.— Appellants were convicted of unlawful dealing in a Schedule I controlled substance, (heroin). Ind. Code § 35-24.1-4.1-2(a) (Burns 1975) repealed October 1, 1977. Each appellant received a sentence of imprisonment for a determinate period of thirteen (13) years.

On appeal both appellants raise four issues in common:

(1)   whether the trial court erroneously refused to order the pre-trial production of a witness from the state prison for defense interviewing;

(2)   adequacy of the chain-of-custody foundation established for admission of the heroin;

(3)   admissibility of evidence and propriety of questioning concerning previous sales of heroin by appellant Braxton;

(4)   prosecutorial misconduct in alluding to "perjury" in final argument.

In addition, appellant Gilliam raises two issues relating only to himself:

(5)   denial of a motion to dismiss the charging information; and

(6)   sufficiency of the evidence of appellant Gilliam's guilt.

Booker Tyrone Braxton (Tyrone), the estranged husband of appellant Minnie Braxton, worked as an informant for Sergeant Douglas Schultz, a narcotics investigator for the Indiana State Police. On March 16, 1976, Tyrone went to Muncie with Schultz and another detective, Harris. They met appellant Braxton at a service station, and Tyrone told her they wanted to buy heroin. She made arrangements to meet them at her house in an hour to deliver three "buttons" of heroin for sixty dollars.

Appellant Gilliam was inside the station during the initial conversation outside. He and appellant Braxton were both observed talking on the station's public telephone before the arrangements for the sale were finalized, and he accompanied her when she emerged to complete the sale agreement and accept Schultz's money. Both appellants left the station in Gilliam's automobile which he drove.

About an hour later appellants met Tyrone and the detectives at appellant Braxton's house. They sat in the kitchen and conversed; appellant Braxton mentioned difficulties in obtaining the heroin. After ten or fifteen minutes of conversation, appellant Braxton produced three tin foil packets. She gave two to Schultz and kept one for herself. Upon analysis one of the packets proved to contain heroin; the other was not tested.

## I.

During the period before trial Tyrone was serving a sentence for forgery in the Indiana State Prison in Michigan City. On April 12, 1977, six days before trial, the State served appellants with a list of witnesses, including Tyrone. On April 15, a Friday, appellants filed with the trial court a motion seeking to have the court order Tyrone's production for interviewing by defense counsel. Appellants also subpoenaed Tyrone to appear as their witness. On the morning of Monday, April 18, before commencement of the trial, argument was held on the motion and the trial court held that Tyrone would be produced the next day, and that defense counsel would be given an opportunity to interview him before he testified. The court noted that Tyrone was in the process of being discharged on the 18th.

Tyrone was produced the 19th. He was not called as a witness for the State, but testified for appellants. The thrust of his testimony was that no drug transaction had taken place, and that various portions of the detectives' testimony related impossible events.

On appeal it is urged that the trial court's failure to order Tyrone's immediate production on the morning of trial deprived appellants of a fair trial in that they were denied the benefit of Tyrone's knowledge of the prosecution evidence in the preparation of their defense. In the trial court, however, appellants rested their request for Tyrone's production on two entirely different bases:

the need to preview and meet Tyrone's anticipatedly unfavorable testimony, and concern that if Tyrone were released from prison he might not appear at trial voluntarily. The trial court's ruling accommodated both of these asserted defense interests. The court assured appellants that Tyrone would appear and that an opportunity to interview him would be provided. Appellants asserted no interest in having access to Tyrone in order to develop evidence favorable to themselves through his cooperation with the defense, a factor no one seems to have anticipated. Appellants cannot fault the court below for failing to accomodate an interest which they never asserted before that court. *Ortez v. State,* (1975) 165 Ind.App. 678, 333 N.E.2d 838, and *Dorsey v. State,* (1970) 254 Ind. 409, 260 N.E.2d 800, cases in which the State concealed informants or sent them beyond the reach of the court's process, are relied on by appellants, but have no application here. The trial court's failure to produce Tyrone on the morning trial began did not deny appellants a fair trial.

## II.

Appellants challenge the admissibility of the two tin foil packets of heroin on the grounds of an allegedly inadequate chain-of-custody.

Sergeant Schultz placed the packets in his pocket after appellant Braxton gave them to him. After leaving the Braxton house he placed them in a plastic envelope sealed with "evidence tape" which disintegrated upon removal. Schultz wrapped the envelope for mailing and sent it by registered mail to the State Police laboratory in Indianapolis. The chemist who analyzed the heroin testified that he received the package still wrapped and bearing the registered mail receipt stub. The envelope within was still sealed with evidence tape. The chemist did not receive the package from the mail carriers; the receipt was signed by a lab technician, who apparently gave the package to a secretary who gave it to the chemist.

Appellants contend that since the secretary and technician who handled the evidence did not testify concerning their handling of the evidence, the chain-of-custody shown was incomplete. We believe that it was not. The purpose of the requirement that a chain-of-custody be shown is to eliminate the possibility of tampering, loss, or substitution of the evidence. *Graham v. State,* (1970) 253 Ind.

525, 255 N.E.2d 652. Here the possibility of tampering was precluded by the sealing of the envelope, that of loss or substitution by the recording of the registered mail number by both Sergeant Schultz and the chemist. These precautions give "reasonable assurance that the exhibit has passed through the various hands in an undisturbed condition," *Guthrie v. State,* (1970) 254 Ind. 356, 363, 260 N.E.2d 579, 584, and obviate any need for the testimony of the technician, secretary, and any postal employees who handled the sealed package in transit.

### III.

Before trial appellants moved for and obtained an order *in limine* instructing the prosecutor to make no reference in the presence of the jury to any separate offenses committed by appellants, except convictions admissible to impeach the credibility of either accused who might testify.

During the direct examination of appellant Minnie Braxton, she detailed her history of heroin abuse and addiction:   at the time of the alleged offense she had used heroin for one or two years and was addicted to its use; subsequently she sought treatment for her addiction and was no longer using heroin at the time of trial. She denied having handed over the heroin as charged.

"Q.   Alright. Now, you heard Mr. Schultz, Doug Schultz testify yesterday that when you came back to the house, you placed three tinfoil packets on the kitchen table?

A.   That's — but, I never had — I know I have never did that.

Q.   Alright. I wanta ask you. Did, except for the one tablet that your husband uh gave to you, did you have any heroin at all in your possession that day?

A.   No, I didn't.

Q.   Now, uh did you place two or three or any number of packets on the kitchen table of your house that day?

A.   No, I didn't have any. He gave me the one that I had."

On cross-examination, appellant was asked, "Have you been dealing in drugs for a long time, too?" After initial confusion appellant denied that she had ever dealt in drugs. Appellant objected to this line of cross-examination. On direct examination of appellant Gilliam, he was asked

and he affirmed that he knew appellant Braxton to be a heroin addict. The State called Sergeant Schultz as a rebuttal witness. Over appellants' objection, he related making drug purchases from appellant Braxton before March 16, 1976. Appellants argue that the cross-examination of appellant Braxton and the rebuttal testimony of Schultz should not have been permitted and that they are entitled thereby to a new trial.

Appellants' argument assumes that the granting of a motion *in limine* is a final determination of the admissibility of the evidence referred to in the motion. As the court recently noted in *Lagenour v. State*, (1978) 268 Ind. 441, 376 N.E.2d 475, 481, this is not the office of that motion. Therefore it is not in itself grounds for reversal that the trial court permitted the prosecutor to ask questions upon subjects embraced by the ruling on the pre-trial motion. The question upon appeal is whether the evidence and cross-examination was proper and admissible, and if not, whether the error was sufficiently prejudicial to warrant reversal.

The State concedes that evidence of prior heroin sales by appellants would not ordinarily be admissible, see *Thornton v. State*, (1978) 268 Ind. 456, 376 N.E.2d 492, 493, but contends that appellants "opened the door" to its admission by offering appellant Braxton's description of her history of heroin abuse. Having themselves entered this area, the State urges, appellants may not complain when the State follows.

The State argues that in describing appellant Braxton's heroin use appellants themselves disclosed that appellant Braxton had possessed heroin. Since this possession would violate Ind. Code §§ 35-24.1-4.1-6 and 7 (Burns 1975) repealed October 1, 1977, appellants themselves injected the issue of unrelated drug offenses into the trial and cannot complain that the prosecution revealed additional offenses, prior heroin sales. "Thus, the appellant having opened the door to evidence of past criminal convictions of this witness on direct examination, he is in no position to complain of any others disclosed on cross-examination." *Baker v. State*, (1978) 267 Ind. 643, 372 N.E.2d 1174, 1175. While an uncritical acceptance of the wording employed in cases under this rule would support the State's position, we believe that there is a further, often unstated requirement implicit

in those cases:   the evidence relied upon to "open the door" must leave the trier of fact with a false or misleading impression of the facts related. In most of these cases the accused or a defense witness has made a deceptively incomplete disclosure of his criminal record; *Baker v. State, supra; Martin v. State*, (1973) 261 Ind. 492, 306 N.E.2d 93 ("conflicts with the law"); *Roby v. State* (1977) 173 Ind.App. 280, 363 N.E.2d 1039 ("past skirmishes with the law"); *McDonald v. State*, (1975) 163 Ind.App. 667, 325 N.E.2d 862 ("appellants refer to their status as parolees — State allowed to show convictions"); *Hannah v. State*, (1974) 160 Ind.App. 317, 311 N.E.2d 838 ("past record"). In *Randolph v. State*, (1978) 269 Ind. 31, 378 N.E.2d 828, the accused falsely denied that he had ever been arrested, and the State was permitted to cross-examine him about an arrest for an unrelated offense. In *Pearish v. State*, (1976) 264 Ind. 339, 344 N.E.2d 296, the defendant testified on direct that he had served as a marine, and the State was permitted to question him as to the nature of his discharge.

The case before us is closely analogous to these. The defense portrayed appellant Braxton as having been a heroin user and herself the helpless victim of those who sell drugs for money profit. Her involvement with drugs was described as having gone on for a two year period prior to the events occurring on March 16, 1976, from which the charge of delivery stemmed. This portrayal was accompanied by her testimony that Tyrone Braxton gave her a "button" of heroin which she injected while the group was present in her house on that day and this recitation was coupled with a steadfast denial of guilt. In so casting this extended period of appellant's former life as involving only the illegal use of drugs, the defense sought to persuade the jury to infer that her involvement with drugs on the occasion charged was likewise so limited. As the basis for this salient inference appellants presented a misleading and incomplete picture of appellant's Braxton's involvement with heroin, and such presentation justified the challenged cross-examination by the prosecution and the introduction on rebuttal of the testimony of Officer Schultz that appellant Braxton had previously sold him drugs.

IV.

During his summation the prosecutor delivered the following statement:

"MARSHALL HANLEY, DEPUTY PROSECUTOR:   I want a tell you in all frankness that I have never been involved in a case in which there has been as much out right pergery [sic] as I've heard in this case."

After defense objection, he continued:

"MR. HANLEY:   I don't know who committed the pergery."

After the trial court overruled the objection and request for mistrial:

"MR. HANLEY:   You heard the evidence ladies and gentlemen and as I told you initially in this case, the judge will instruct you that you are the sole judges of the credibility of the witnesses. You're gonna have to decide and you alone, who was telling the truth."

The prosecutor's argument continued in this vein emphasizing the irreconcilable conflicts between the prosecution and defense testimony and the necessity of choosing the true account of the transaction.

Appellants argue that the first remark quoted was improper and gravely prejudicial because: (1) it implied extrajudicial personal knowledge on the prosecutor's part of the facts underlying the prosecution, and (2) it imputed guilt of a felony to the defense witnesses.

In *Craig v. State*, (1978) 267 Ind. 359, 370 N.E.2d 880, this Court considered a prosecutorial reference in closing argument to the "perjured testimony of some of the defense witnesses."

"Disciplinary Rule 7-106(C)(4) of the Code of Professional Responsibility as adopted in Indiana provides:

'(c)   In appearing in his professional capacity before a tribunal, a lawyer shall not:

\* \* \*

(4)   Assert his personal opinion . . . as to the credibility of a witness . . . but he may argue, on his analysis of the evidence, for any proposition or conclusion with respect to the matters stated herein.'

Thus it is unprofessional conduct for an attorney to simply assert that a witness is untruthful, although he may argue that for reasons arising from the evidence the witness should be disbelieved. The prosecutor's unexplained references to defense perjury was [sic] improper." 370 N.E.2d at 884.

In this case the prosecutor's "perjury" remark was prefatory to proper argument that since the testimony of the various witnesses was in irreconcilable conflict, the jury would have to choose whom they would believe. It is always preferable that counsel cast arguments on witness credibility in terms unmistakably based upon his analysis of the evidence, *Swope v. State*, (1975) 263 Ind. 148, 325 N.E.2d 193; *De Hority v. State*, (1939) 215 Ind. 390, 19 N.E.2d 945, and avoid references to his personal experience ("I have never been involved . . . [with] as much outright perjury. . . ."). *Eliacin v. State*, (1975) 263 Ind. 119, 325 N.E.2d 201. But given the context of this remark the likelihood that the jury would have understood it as a personal expression of opinion appears even less substantial than that presented in *Craig*, which in turn was insufficient to place that defendant in such grave peril as to warrant a mistrial. *Craig v. State, supra.* While the trial court gave no admonition to the jurors, the prosecutor's own argument forcefully disclaimed any improper inferences which the objectionable remark might otherwise have prompted the jurors to draw.

Appellants claim that the "perjury" remark was, nonetheless, gravely prejudicial, because it attributed to the defense witnesses the felony of perjury. Appellants assert that characterizing defense testimony as "perjury" is significantly more prejudicial than calling it "lies". The distinction which the jurors are likely to make between these terms is not apparent to the court in this case any more than in *Craig* or *De Hority, supra.* To the extent that the prosecutor's remark overstepped the bounds of permissible advocacy, we cannot say that the excess placed appellants in grave peril to which they should not have been subjected. *Craig v. State, supra.*

## V.

Before trial appellant Gilliam filed with the trial court a motion to dismiss the information, which the trial court denied. Appellant urges on appeal that the information should have been dismissed.

The basis of the motion was that the probable cause affidavit which accompanied the charging information failed "to state any act which

Kenneth Gilliam performed which would be a public offense." Ind. Code § 35-3.1-1-4(a) (Burns 1975) lists the grounds upon which a motion to dismiss may be based. While subsection (9) thereof lists as grounds for dismissal that "the indictment or information does not state the crime with sufficient certainty or the facts stated do not constitute a crime," nowhere in section 4 is deficiency of a probable cause affidavit made grounds for dismissal of the information.

The probable cause affidavit is not the means by which the accused is charged with a crime, but is a means of satisfying the constitutional and statutory requirements that the pre-trial detention of the accused to face the charge be based upon a determination, by a neutral and detached magistrate, that probable cause exists to believe that the accused committed the crime. Ind. Code § 35-3.1-1-1(b), (d) (Burns 1975); *Gerstein v. Pugh*, (1975) 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54. Appellant's motion stated no valid grounds for dismissal of the information and was properly denied.

If appellant's contention as to the sufficiency of the probable cause affidavit were correct, the only remedy available to him would be discharge from the custody of the sheriff based upon the probable cause determination supported by the deficient affidavit. *State ex rel. French v. Hendricks Superior Court*, (1969) 252 Ind. 213, 247 N.E.2d 519. Since appellant is no longer incarcerated by virtue of the magistrate's determination of probable cause in the trial court, since there is no allegation that any evidence against appellant was derived from his pre-trial incarceration, and since an absence of probable cause does not in itself affect the validity of a conviction, *Williams v. State*, (1973) 261 Ind. 385, 304 N.E.2d 311, appellant presents no issue on appeal.

## VI.

Appellant Gilliam argues that the evidence of his guilt is not sufficient. As the summary of the evidence recited above would indicate, Gilliam did not participate orally in the sale negotiations, and he was not seen to receive any of the sale price or handle the heroin. On the other hand, Gilliam was present during the agreement on price and delivery. Schultz testified that during this conversation appellant Braxton "advised that her and Kenny [Gilliam] would pick it up." This state-

ment was made in Gilliam's presence immediately after the money changed hands and immediately before appellants drove off. When the detectives first offered to purchase heroin, appellant Braxton had said that she would have to make a telephone call. She entered the service station and both appellants were seen talking on the telephone. Finally both appellants arrived together at the Braxton house and Gilliam remained through the actual transfer of the heroin.

The offense of which appellants were convicted, as defined in section 35-24.1-4.1-2(a)(1), consists of "knowingly . . . deliver[ing] a controlled substance . . . classified in Schedule I, II, or III. . . ." Appellant Braxton clearly delivered heroin to Schultz. The jury was warranted by the evidence in believing that appellant Gilliam, aware of the nature of the transaction, aided her in doing so by driving her in his own automobile to pick up and deliver the heroin. Such conduct would suffice to render appellant Gilliam guilty of the offense, Ind. Code § 35-1-29-1 (Burns 1975) repealed October 1, 1977, whether or not the appellants were, as the State suggests, engaged in a partnership or joint venture in heroin dealing.

Convictions are affirmed.

Givan, C.J., Hunter, Prentice and Pivarnik, JJ. concur.

NOTE—Reported at 383 N.E.2d 297.