## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 18 2017, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEES
DAVID BIELA AND JAMES
LIVERMAN

Stephen A. Kray
LaPorte, Indiana

ATTORNEYS FOR APPELLEES
SANLEY MAZUR AND GREGORY
CZIZEK

William F. Sullivan, Jr.
Michigan City, Indiana

Stephen A. Kray
LaPorte, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Plaintiff*,

v.

David Biela, Gregory Czizek, James Liverman, and Stanley Mazur,

January 18, 2017

Court of Appeals Case No. 46A03-1608-CR-1742

Appeal from the LaPorte Superior Court

The Honorable Michael S. Bergerson, Judge

Trial Court Cause Nos.

*Appellees-Defendants.*

46D01-1602-F5-155
46D01-1602-F5-156
46D01-1602-F5-160
46D01-1602-F5-161

**Brown, Judge.**

[1] The State of Indiana appeals the trial court's order granting motions to dismiss filed by David Biela, Gregory Czizek, James Liverman, and Stanley Mazur (together, the "Appellees"). The State raises one issue which we revise and restate as whether the trial court abused its discretion in denying the State's motions to amend its charging informations and in dismissing the charges against the Appellees. We reverse and remand.

### Facts and Procedural History

[2] On February 19, 2016, the State filed charges against each of the Appellees under separate causes.[1] The State charged Biela under cause number 46D01-1602-F5-155 ("Cause No. 155") with five counts of promoting professional gambling as level 6 felonies and one count of corrupt business influence as a level 5 felony.[2] The State charged Czizek under cause number 46D01-1602-F5-

---

[1] According to the State, it also charged John Greene under another cause with five counts of promoting professional gambling as level 6 felonies and one count of corrupt business influence as a level 5 felony and he pled guilty to two counts of promoting professional gambling as level 6 felonies in exchange for dismissal of the other counts.

[2] Amended information was filed against Biela on March 15, 2016, to correct a typographical error.

156 ("Cause No. 156") with three counts of promoting professional gambling as level 6 felonies and one count of corrupt business influence as a level 5 felony. The State charged Liverman under cause number 46D02-1602-F5-160 ("Cause No. 160") with four counts of promoting professional gambling as level 6 felonies and one count of corrupt business influence as a level 5 felony. The State charged Mazur under cause number 46D01-1602-F5-161 ("Cause No. 161") with five counts of promoting professional gambling as level 6 felonies and one count of corrupt business influence as a level 5 felony. The information filed in each of the Appellee's cases alleged, with respect to the counts of promoting professional gambling as level 6 felonies, that the Appellee "did knowingly or intentionally own, manufacture, possess, buy, sell, rent, lease, repair or transport a gambling device, to wit: . . . parlay cards . . . for illegal football betting and wagers" and referred to Ind. Code § 35-45-5-4(a)(1).[3]

---

[3] The informations cited "I.C. 35-45-5-4 (1)," which appears to be a reference to Ind. Code § 35-45-5-4(a)(1). Ind. Code § 35-45-5-4(a)(1) provides that a person who "knowingly or intentionally owns, manufactures, possesses, buys, sells, rents, leases, repairs, or transports a gambling device, or offers or solicits an interest in a gambling device" commits promoting professional gambling, a level 6 felony. Ind. Code § 35-45-5-1(e) provides:

"Gambling device" means:

(1) a mechanism by the operation of which a right to money or other property may be credited, in return for consideration, as the result of the operation of an element of chance;

(2) a mechanism that, when operated for a consideration, does not return the same value or property for the same consideration upon each operation;

(3) a mechanism, furniture, fixture, construction, or installation designed primarily for use in connection with professional gambling;

(4) a policy ticket or wheel; or

(5) a subassembly or essential part designed or intended for use in connection with such a device, mechanism, furniture, fixture, construction, or installation.

Appellant's Appendix, Volume 2, at 15-16, 49, 80, 110-111. The information for each of the Appellees alleged, with respect to the counts of corrupt business influence, that the Appellee "was associated with a group of individuals who promoted illegal gambling through distribution, collection and payments associated with parlay cards for illegal football betting and wagers."[4] *Id.* at 16, 49-50, 81, 111.

[3] An affidavit for probable cause prepared by Indiana Gaming Commission Officer Jeffery Boyd was filed in each of the four causes. The affidavit stated that an investigation corroborated anonymous information regarding an illegal gambling operation and that "[t]he gambling devices utilized throughout were 'parlay cards,' or sports betting cards, which list the week's games and odds on those games." *Id.* at 9. The affidavit stated that Liverman would visit Biela's print shop, return to his vehicle carrying a bag containing items consistent with stacks or bulk packs of cards, and drive to other locations in an apparent delivery route, that his behavior was consistent through the football seasons of 2013, 2014, and 2015, that on one occasion Liverman was observed delivering a bag to a manager at a certain establishment, that based on Boyd's training and experience he believed this to be the previous week's payouts and new parlay

In the application of this definition, an immediate and unrecorded right to replay mechanically conferred on players of pinball machines and similar amusement devices is presumed to be without value.

[4] The informations cited Ind. Code § 35-45-6-2(3), which provides that a person "who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity; commits corrupt business influence, a Level 5 felony."

cards, and that after Liverman left, another patron asked the manager for a card and the manager reached into the bag Liverman had delivered and handed a card to the person. The affidavit provided that Greene was observed interacting with Liverman and Biela, picking up cards from Biela's residence, and traveling a route to several bars and restaurants, that Gaming Commission officers were able to purchase football parlay cards at multiple establishments Greene was observed to visit, and that on one occasion Gaming Commission officers were able to obtain football parlay cards at a Michigan City establishment and place bets on them. The affidavit stated that, during the 2013, 2014, and 2015 football seasons, Mazur was observed on multiple occasions picking up parlay cards from Biela's home and business.

[4] Further, the affidavit stated that search warrants were executed at Biela's residence and his print shop, multiple items consistent with bookmaking were documented and seized, Biela made admissions he had been printing parlay cards for a long time and the current business was divided up between Greene, Liverman, Mazur, and Czizek, he printed 1,150 cards weekly for Greene, 1,200 weekly for Liverman, 600 for Czizek, and 900 for Mazur, that these individuals control the parlay card distribution and no other person would be able to distribute cards in the area, and that, at the print shop, a shelf was observed containing football parlay cards under the names of Greene, Mazur, Czizek, and Liverman. In the paragraph describing the execution of the search warrants at Biela's residence and print shop, the affidavit included a sentence stating that, "[d]uring the execution of that search warrant, the phones in the

residence rang constantly with individuals seeking to place bets." *Id.* at 12. The affidavit stated that ledgers of betting records and parlay cards were discovered at Liverman's home during the execution of a search warrant, that bank bags and parlay cards were discovered at Greene's home during the execution of a search warrant, that throughout the search warrant execution the name Czizek came up from Biela and was found on the shelves of printed parlay cards, and that Biela indicated Czizek was involved in the distribution of parlay cards.

[5] At the initial hearing on March 1, 2016, the court scheduled the omnibus date for April 21, 2016 in each cause. On March 24, 2016, Biela filed a Consolidated Motion to Dismiss Amended Charging Information and Quash Affidavit for Probable Cause, arguing in part that parlay cards do not fall within the statutory definition of an illegal gambling device and that his printing, possessing, and delivery of parlay cards to others does not render him criminally liable for how they were used by others.[5]

[6] On April 5, 2016, the State filed a request for leave to file an amended information against Biela under Cause No. 155. The State's request stated that it "concedes there may be some merit to Defense Counsel's argument regarding gambling devices and thus files this amended information under a more appropriate subsection of the chapter under which original charges were filed

---

[5] Biela also argued that the affidavit should be dismissed because it was obtained by a law enforcement officer presenting false information and that the statement in the affidavit that, during the execution of a search warrant, the phones in the residence rang constantly was false.

and and [sic] alleges the same underlying events involved." *Id.* at 24. The State argued that no trial date had been set and that Biela's substantial rights were not jeopardized.[6] On the same day the State also filed requests for leave to file amended informations in the other causes. With respect to the charges for promoting professional gambling, the State requested that the informations be amended to allege that the Appellees "did . . . knowingly or intentionally . . . receive gambling information by any means, to wit: . . . football game and point spread information" and to cite to Ind. Code § 35-45-5-4(a)(2).[7] *Id.* at 27, 58, 89-90, 119-120. The State also requested the charging informations for each of the Appellees be amended, with respect to the counts of corrupt business influence, to allege the Appellee "was associated with a group of individuals who promoted illegal gambling." *Id.* On May 10, 2016, Czizek, Livermore, and Mazur each filed motions to dismiss the charges against them. Entries dated April 22, 2016, in the chronological case summaries state that the court scheduled a hearing for May 19, 2016, and set an omnibus date for June 16, 2016.

---

[6] The State also indicated that it was filing an amended probable cause affidavit to correct a scrivener's error, namely, that a sentence stating that the phones in the residence rang constantly during the execution of a search warrant was erroneously included in the paragraph referring to Biela's home but belonged instead in the paragraph referring to Liverman's home.

[7] Ind. Code § 35-45-5-4(a)(2) provides that a person who, "before a race, game, contest, or event on which gambling may be conducted, knowingly or intentionally transmits or receives gambling information by any means, or knowingly or intentionally installs or maintains equipment for the transmission or receipt of gambling information," commits promoting professional gambling, a level 6 felony.

On May 19, 2016, the court held a joint hearing on the motions to dismiss and the motions to amend the charging informations. At the hearing, Biela's defense counsel argued that the statute does not regulate or prohibit possession of parlay cards and that the probable cause affidavit does not state that Biela received any monetary gain from the gambling operation, received any percentage of the wins, or contributed to any percentage of the losses. The court noted that it did not see any evidence in the affidavit that would indicate that any wagers were even placed. Biela's counsel noted that gambling means risking money for gain contingent upon chance and argued there is no evidence Biela did anything contingent upon chance.[8] The court asked if there was any evidence by affidavit or otherwise that Biela ever took a wager, and Biela's counsel indicated there was not. The prosecutor conceded that parlay cards do not fit under the portion of the statute for possession of a gambling device but argued that the parlay cards were used to transmit gambling information which is illegal under the statute. The prosecutor noted that the definition of gambling information includes information intended to be used for professional gambling,[9] and argued that professional gambling is defined in the statute that criminalizes it and that the applicable definition is one that "[a]ccepts or offers

[8] Ind. Code § 35-45-5-1(d) provides in part: "'Gambling' means risking money or other property for gain, contingent in whole or in part upon lot, chance, or the operation of a gambling device, but it does not include participating in: . . . (2) bona fide business transactions that are valid under the law of contracts."

[9] Ind. Code § 35-45-5-1(f) provides that "[g]ambling information" means "(1) a communication with respect to a wager made in the course of professional gambling; or (2) information intended to be used for professional gambling."

to accept for profit money or other property raised in gambling."[10]  Transcript at 16.

[8]  The court asked if the probable cause affidavit indicated that there was an acceptance of money for professional gambling and noted that there had been a sworn statement that Greene physically took cash in exchange for one of the parlay cards.  The prosecutor argued there was circumstantial evidence that the Appellees would return to collect their parlay cards and the money that had been wagered.  The prosecutor indicated that this was mentioned in the affidavit which stated they returned to collect a bag.  The court asked what was in the bag, and the prosecutor replied that she believed "agents would testify that that would be consistent with containing parlay cards and money.  They would also return and pay out winners." *Id.* at 20.  The prosecutor further argued: "The wagers were filled out by individuals.  Money was attached to them and they were put into a bag to be picked up by the four defendants." *Id.*  The court later asked "[s]o you've got evidence . . . that . . . there was some wagers being made," the prosecutor replied affirmatively, the court asked "and why wasn't that in the Affidavit," and the prosecutor replied "I don't believe we have to state our entire case within that Affidavit." *Id.* at 20-21.  The court stated "[w]ell enough to . . . get probable cause and . . . now you're asking the Court to Amend the Charging Information." *Id.* at 21.  The prosecutor replied

---

[10] Ind. Code § 35-45-5-3(a) provides in part that a person who knowingly or intentionally "accepts, or offers to accept, for profit, money, or other property risked in gambling" commits professional gambling, a level 6 felony.

that the affidavit included the fact officers were able to place wagers, and the court stated: "One. One, with John Green[e] who pled guilty this morning." *Id.* at 21. The prosecutor responded "Yes, Your Honor" and stated that the affidavit contained information that these individuals were observed multiple times running their routes and collecting their money and included substantial information that they knew they were transmitting gambling information. *Id.*

[9] The court asked Officer Boyd if there was any information in the affidavit that indicated that the Appellees "took any cash in exchange – and made a wager? Took a wager," and Officer Boyd testified "No, just the fact that they were – the gathering up the cards and, and like – as she had said, the [sic] had a route and had provided that information." *Id.* at 40-41. When asked if the men took money directly, Officer Boyd indicated he observed Liverman take money but not the other Appellees. When asked why that was not included in the affidavit, Officer Boyd indicated he felt he had sufficient information in the affidavit to support the charges. The court stated that it was surprising that an investigation of this magnitude would have such little information about a gambling operation that only indicated that one defendant, who has pled guilty, took a bet on one occasion. The court noted that the motions to amend the charging informations were "not done within the 30 days of the original

omnibus hearing," and stated "[i]t was done 20 days, so it was not timely filed."[11]  *Id.* at 48.

[10]     On July 11, 2016, the court issued an Order on Defendants' Motion to Dismiss and State's Motions to Amend Information which denied the State's motions to amend the charging informations and granted the motions to dismiss in each of the Appellees' cases.  The court found that parlay cards did not constitute gambling devices under Ind. Code § 35-45-5-4(a)(1).  Further, the court noted that the State conceded at the hearing that its motion to amend was not timely filed pursuant to Ind. Code § 35-34-1-5.  The court found that, though it has discretion to permit a belated amendment, the State's argument that the Appellees' substantial rights were not being violated was disingenuous.  The court found that, in the first place, the State seeks to prosecute the Appellees under a totally different legal theory and different section of Ind. Code § 35-45-5-4(a).  Secondly, it found that the State identified certain activities "which it contends support the finding of probable cause" and that the "described activities fail to allege any criminal conduct; given the fact that the mere possession of parlay cards is not illegal."  Appellant's Appendix, Volume 2, at 43-44, 73-74, 104-105, 135-136.  The court also found that, in its attempt to rescue its case, the State's motions to amend were "supported only by the marginally modified affidavit" of Officer Boyd which "again fails to allege an

---

[11] The court scheduled the original omnibus date under each cause for April 21, 2016, and the State filed its requests to file amended informations on April 5, 2016, which was sixteen days before the omnibus date.

essential element of the crime of gambling . . . . 'the risking of money or property on lot or chance,' or in other words, the placement of a wager OR the making of a bet." *Id.* at 44, 74, 105, 136. The court's order also included the following in a footnote:

> It's hard to believe that after three years of investigation that the Indiana Gaming Police were unable to establish any direct proof of illegal gambling other than the two wagers placed with Defendant John Greene; who has pled guilty. With respect to the conduct of the other charged defendants, the affidavit contains nothing more than speculation and conjecture. Criminal cases require much more proof than that.
>
> By contrast, in undercover drug cases investigated by the MCPD Drug Task Force, a confidential informant is outfitted with a wire and a 'button cam' to record the illegal exchange, together with prerecorded drug-buy cash. Use of such protocol, is standard operating procedure. The efforts of the Indiana Gaming Police fall woefully short of what is universally expected in such undercover operations.

*Id.* at 44 n.3, 74 n.3, 105 n.3, 136 n.3. The court dismissed the charges against the Appellees.

### *Discussion*

[11] The issue is whether the trial court abused its discretion in denying the State's motions to amend the charging informations and in dismissing the charges against the Appellees. The State argues that it sought to amend the charges to allege violations under subsection (a)(2) of the statute and that "[t]he operative facts supporting the charge remained the same, as the proffered amended charges alleged that the parlay cards, which contain point spread information,

constituted the 'gambling information' that the defendants transmitted or received." Appellant's Brief at 13. It notes that it sought the amendments sixteen days prior to the omnibus date and argues that the Appellees had a reasonable opportunity to prepare for and defend against the proposed amended charges and that no trial date had been scheduled. The State further asserts that "the court clearly thought it mattered whether [Appellees] themselves were involved in actual gambling," that it was not alleging the Appellees placed wagers or bets but only that they received or transmitted information that was intended to be used to engage in professional gambling, and that the facts alleged were sufficient to state the offense of promoting professional gambling. *Id.* at 16-17. It also argues that "whether the evidence will be sufficient to prove the offense beyond a reasonable doubt is not a consideration that may come into play at this stage; a court may not dismiss charges because it finds the evidence insufficient to prove the offenses" and that, "even if [it] were required to prove that [Appellees] engaged in gambling, a perceived lack of sufficient evidence to prove this fact would not be a proper basis for dismissal." *Id.* at 18.

[12]     Biela and Liverman assert that "[t]he trial court dismissed the original and requested amended informations for want of probable cause." Appellee Biela and Liverman's Brief at 5. They argue that, "[w]ithout being presented evidence of ongoing gambling in a three year gambling investigation the judge was hard pressed to determine probable cause that was sufficient to charge the defendants with a gambling offense, ie what gambling activity was aided, induced, or caused" by Appellees and "before what gambling events did the

defendants knowingly and intentionally transmit or receive gambling information for those events as charged." *Id.* at 6. They argue that Biela engaged in bona fide business transactions. They also argue that the trial court's decision was based on the want of sufficient probable cause supporting the original and proposed amended informations and "[y]et the State has chosen to waive this issue on appeal and focus only on the issue of statutory interpretation." *Id.* at 8.

[13] Mazur and Czizek argue that the court was within its discretion when it granted the motions to dismiss the charges rather than allowing the State to make substantive amendments, that the proposed amendment constitutes a totally different crime and legal theory of prosecution, and that the court correctly ruled the amendment "was a violation of the defendant's substantial rights." Appellee Mazur and Czizek's Brief at 8. They also argue that the probable cause affidavit "is void of facts of transmitting gambling information, which is information that is <u>intended</u> to be used for professional gambling," and that "[t]here is nothing in the Probable Cause Affidavit supporting gambling charges" against Mazur or Czizek. *Id.*

[14] In reply, the State argues that the proposed amended informations merely changed the subsection of the statute under which the charges were brought, that it is black-letter law in Indiana that a lack of probable cause is not a proper basis upon which charges may be dismissed, that the offense can be committed even if no one ever actually uses the information in order to place or receive a

bet or wager, and that the probable cause affidavit clearly alleges the receipt of the gambling information by Mazur and Czizek.

[15] A charging information may be amended at various stages of a prosecution, depending on whether the amendment is to the form or to the substance of the original information, and whether an amendment to a charging information is a matter of substance or form is a question of law. *Erkins v. State*, 13 N.E.3d 400, 405 (Ind. 2014) (citations omitted), *reh'g denied*. Ind. Code § 35-34-1-5(b) provides:

> The indictment or information may be amended in matters of substance and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant at any time:
>
> > (1)    up to:
> >
> > > (A)    thirty (30) days if the defendant is charged with a felony; or
> > >
> > > (B)    fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;
> >
> > before the omnibus date; or
> >
> > (2)    before the commencement of trial;
>
> if the amendment does not prejudice the substantial rights of the defendant. . . .

[16] A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge, and if the amendment does not affect any particular defense or change the positions of either of the parties, it

does not violate these rights. *Erkins*, 13 N.E.3d at 405 (citation omitted). Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges. *Id.* at 405-406 (citations omitted).

[17] Here, the State's proposed amendments to the charging informations against the Appellees do not prejudice their substantial rights. The original charging informations were filed on February 19, 2016, and the State's requests to amend the informations were filed forty-six days later on April 5, 2016, before any trial date had been scheduled. Further, the original charging informations cited subsection (1) of Ind. Code § 35-45-5-4(a) and alleged the Appellees committed the offenses of promoting professional gambling based on their use of parlay cards for illegal football betting and wagers, and the proposed amended informations cited subsection (2) of the statute and alleged they committed the offenses by transmitting or receiving football game and point spread information. The original charging informations also alleged the Appellees committed the offense of corrupt business influence and were associated with a group of individuals who promoted illegal gambling through distribution, collection, and payments associated with parlay cards for illegal football betting and wagers, and the proposed amended informations alleged they were associated with a group of individuals who promoted illegal gambling.

[18] Based upon the record, and in light of the fact the requests to amend were filed forty-six days after the original information and before any trial date had been scheduled, we conclude the Appellees had a reasonable opportunity to prepare for and defend against the charges as amended and that the trial court erred in

denying the State's motions to amend the charging informations. *See Blythe v. State*, 14 N.E.3d 823, 830 (Ind. Ct. App. 2014) (holding that the defendant was not prejudiced by the trial court's order granting the State's motion to amend the charging information and that the defendant had a reasonable opportunity to prepare for and defend against the charges); *Gomez v. State*, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009) (holding the amended information did not prejudice the defendant's substantial rights, that the time period between the amendment of the charging information and the jury trial was approximately ten months and gave the defendant the opportunity to prepare for the murder charge, and that the defendant could not show that he was prejudiced by the added charge as he had ample notice of the new charge and a significant amount of time to prepare a defense for the trial), *trans. denied*.

[19] We review a trial court's dismissal of a charging information for an abuse of discretion. *State v. Isaacs*, 794 N.E.2d 1120, 1122 (Ind. Ct. App. 2003). In reviewing a trial court's decision for an abuse of discretion, we reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

[20] To the extent the trial court's order dismissing the charges against the Appellees rested on a determination that the probable cause affidavit was defective or did not establish that probable cause existed to believe the Appellees committed the offenses of promoting professional gambling and corrupt business influence as alleged in the proposed amended information, we observe that Ind. Code § 35-34-1-4 lists eleven possible grounds for dismissing a charging information and a

lack of probable cause is not one of those grounds.[12]  The Indiana Supreme Court has held that "lack of probable cause is not grounds for dismissing a charging information." *Flowers v. State*, 738 N.E.2d 1051, 1055 (Ind. 2000) (noting that the statute allowing a court to dismiss contains no provision regarding a defective probable cause affidavit) (citing *Hicks v. State*, 544 N.E.2d 500, 505 (Ind. 1989) ("The lack of probable cause is not a proper ground on which to predicate a motion to dismiss the information.  The probable cause affidavit relates to the pre-trial detention of a defendant, not the charging

---

[12] Ind. Code § 35-34-1-4(a) provides:

> The court may, upon motion of the defendant, dismiss the indictment or information upon any of the following grounds:
>
> > (1) The indictment or information, or any count thereof, is defective under section 6 of this chapter.
> >
> > (2) Misjoinder of offenses or parties defendant, or duplicity of allegation in counts.
> >
> > (3) The grand jury proceeding was defective.
> >
> > (4) The indictment or information does not state the offense with sufficient certainty.
> >
> > (5) The facts stated do not constitute an offense.
> >
> > (6) The defendant has immunity with respect to the offense charged.
> >
> > (7) The prosecution is barred by reason of a previous prosecution.
> >
> > (8) The prosecution is untimely brought.
> >
> > (9) The defendant has been denied the right to a speedy trial.
> >
> > (10) There exists some jurisdictional impediment to conviction of the defendant for the offense charged.
> >
> > (11) Any other ground that is a basis for dismissal as a matter of law.

Also, Ind. Code § 35-34-1-8 provides in part that a motion to dismiss information under Ind. Code § 35-34-1-4 shall be in writing, states when the court may deny the motion without conducting a hearing, states that if the motion is based upon the existence or occurrence of facts, the motion shall be accompanied by affidavits containing sworn allegations of these facts and that, if a hearing is necessary to resolve questions of fact, the court shall conduct a hearing and make findings of fact essential to the determination of the motion.

instrument."); *Gilliam v. State*, 270 Ind. 71, 383 N.E.2d 297, 303 (1978) (observing "[t]he probable cause affidavit is not the means by which the accused is charged with a crime" but "is a means of satisfying the constitutional and statutory requirements that the pre-trial detention of the accused to face the charge be based upon a determination, by a neutral and detached magistrate, that probable cause exists to believe that the accused committed the crime")), *reh'g denied*; *see also State v. I.T.*, 4 N.E.3d 1139, 1142 (Ind. 2014) (noting that lack of probable cause is not grounds for dismissing a charging information against an adult offender and citing *Flowers*); *Pond v. State*, 808 N.E.2d 718, 721 (Ind. Ct. App. 2004) (observing that lack of probable cause is not grounds for dismissing a charging information and citing *Flowers*), *trans. denied*; *State v. King*, 502 N.E.2d 1366, 1369 (Ind. Ct. App. 1987) (noting that the deficiency of a probable cause affidavit is not a ground for dismissal of the information as the probable cause affidavit is not the manner by which a defendant is charged with a crime); *State v. Palmer*, 496 N.E.2d 1337, 1341 (Ind. Ct. App. 1986) (holding that neither Indiana statute nor case law require a charging information to be accompanied by a probable cause affidavit unless the information is to serve as the basis for an arrest warrant, that the lack of probable cause is not grounds for dismissal, and that the trial court erred in granting a motion to dismiss for lack of probable cause). Thus, dismissal of the informations for lack of probable cause was improper.

[21] Further, as a general rule, when a defendant files a motion to dismiss an information, the facts alleged in the information are to be taken as true. *State v.*

*Morgan*, 60 N.E.3d 1121, 1125 (Ind. Ct. App. 2016) (citing *State v. Bilbrey*, 743 N.E.2d 796, 798 (Ind. Ct. App. 2001)), *trans. denied*; *Isaacs*, 794 N.E.2d at 1122; *King*, 502 N.E.2d at 1368. "The purpose of the information is to allege facts sufficient in law to support a conviction and to sufficiently charge the crimes so that a defendant may prepare a defense and be protected against double jeopardy in the future." *Isaacs*, 794 N.E.2d at 1122; *see also King*, 502 N.E.2d at 1370. The State is not required to include detailed factual allegations in a charging information. *Gutenstein v. State*, 59 N.E.3d 984, 995 (Ind. Ct. App. 2016), *trans. denied*. "Questions of fact to be decided at trial or facts constituting a defense are not properly raised by a motion to dismiss." *Isaacs*, 794 N.E.2d at 1122 (citing *King*, 502 N.E.2d at 1370). "Motions to dismiss, before trial, directed to the sufficiency of the evidence, are improper." *State v. Houser*, 622 N.E.2d 987, 988 (Ind. Ct. App. 1993) (citation omitted), *reh'g denied*, *trans. denied*; *see also Bilbrey*, 743 N.E.2d at 798 (noting it is improper for a trial court to grant a defendant's motion to dismiss an information when it is based on the sufficiency of the evidence). "However, an information may be dismissed if the facts stated in the information do not constitute an offense." *Isaacs*, 794 N.E.2d at 1122. "A hearing on a motion to dismiss is not a trial of the defendant on the offense charged." *Morgan*, 60 N.E.3d at 1126 (citing *Isaacs*, 794 N.E.2d at 1122 (noting that the facts permitted to be raised under Ind. Code § 35-34-1-8 typically concern only pre-trial matters)).

[22] The State's proposed amended charging informations adequately alleged the crimes of promoting professional gambling and corrupt business influence. The

informations listed the statutory provisions and the date and county of the alleged crime of the alleged offenses. Taking the facts in the proposed amended informations as true, the State charged the elements of the offenses sufficiently to allow the Appellees the opportunity to prepare a defense. The trial court essentially granted the Appellees a mini-trial and ruled that there was insufficient evidence to charge them. A hearing on a motion to dismiss is not a trial on the charged offenses, *Morgan*, 60 N.E.3d at 1126, and a motion to dismiss prior to trial directed to the sufficiency of the evidence is improper. *Houser*, 622 N.E.2d at 988. Also, to the extent it is asserted that Biela engaged in bona fide business transactions, we note that "whether one has a statutory defense to the charges in an information goes beyond the issues that may be decided by a motion to dismiss and instead is a matter appropriately decided at trial." *Isaacs*, 794 N.E.2d at 1122-1123.

[23] Accordingly, we conclude that the trial court abused its discretion in granting the Appellees' motions to dismiss. *See Houser*, 622 N.E.2d at 988 (holding that the charging informations clearly alleged sufficient facts to constitute the offenses charged, that motions to dismiss before trial directed to the sufficiency of the evidence are improper, and that the trial court erred in granting the defendants' motions to dismiss); *Bilbrey*, 743 N.E.2d at 799 (holding it would be necessary to develop the facts of the case to determine whether the defendant operated a motor vehicle, that the fact the defendant denied the allegation stating he was operating a motor vehicle does not demonstrate as a matter of law that he was not operating a motor vehicle, and that the trial court erred in

granting the defendant's motion to dismiss the charges against him); *King*, 502 N.E.2d at 1370 (holding that the State's informations adequately charged the crime of unlawfully selling fireworks, that each information listed the statutory provisions, the date and county of the alleged crime, and charged the defendants with unlawfully selling at retail fireworks to an undercover police officer, that the purpose of the information is to allege facts sufficient in law to support a conviction and to sufficiently charge the crimes so that a defendant may prepare a defense and be protected against double jeopardy in the future, that taking the facts alleged in the information as true the State had charged the elements of the crime sufficiently to allow the defendants the opportunity to prepare a defense, that whether the defendants' alleged defense was adequate was a matter appropriately decided at trial, and thus that the trial court erred in granting the motion to dismiss).

## Conclusion

[24] For the foregoing reasons, we reverse the order of the trial court denying the State's motions to amend the charging informations and dismissing the charges against the Appellees.

[25] Reversed and remanded.

Vaidik, C.J., and Bradford, J., concur.