**Ricky Lee JACKSON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 83S00–9812–CR–770.

Supreme Court of Indiana.

May 19, 2000.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Ricky Lee Jackson was convicted of the murder of his wife. He was sentenced to fifty-five years imprisonment. In this direct appeal, he raises five issues for review: (1) whether the trial court improperly dismissed a juror; (2) whether the trial court abused its discretion in permitting the prosecution to cross-examine Jackson regarding a prior battery against the victim; (3) whether the trial court abused its discretion in refusing to allow Jackson to impeach a prosecution witness with extrinsic evidence; (4) whether the evidence was sufficient to support a conviction of murder; and (5) whether the trial court abused its discretion in sentencing him. We affirm the conviction and remand for resentencing on this record.

**Factual and Procedural Background**

On the morning of March 20, 1998, at approximately 8:00 a.m., Jackson's wife Debbie refused to get out of bed. This triggered an argument that continued as Jackson and his wife made three or four circuits of the downstairs of their house. Jackson then looked for his gun to "scare her with." He became angry when he did not find it in the top drawer of their dresser. Debbie located it in the second drawer, handed it to him, and proceeded to the kitchen. Jackson followed. Jackson testified that he then cocked the gun, with an eye to shooting it at the ceiling. According to Jackson, he decided not to fire, but as he was lowering the gun, it discharged, striking Debbie in the head. When Deputy Larry Keller arrived at the scene, Jackson was holding Debbie's head in his hands. Keller ordered Jackson to move away from Debbie, but Jackson responded that if he did Debbie would bleed to death. Keller observed that the living room was in a disarray—a table had been pushed up against the couch and the items on it had fallen to the floor. Keller also observed that the couple's top dresser-drawer was broken and that the pewter buckle on Jackson's belt was broken in half.

Debbie died later that day as a result of the gunshot wound. Jackson maintained throughout the investigation and trial that the shooting was accidental. The jury convicted him of murder.

## I. Dismissal of Juror

The morning after opening statements were given, a teacher-juror asked to be excused, stating that she believed Jackson's nephew was one of her students. The trial court announced that it would bring her in for questioning, but would not allow the parties to question her. No objection was made at that point. The juror told the court she had just discovered this relationship and thought it would be difficult for her to be fair and impartial. After the trial court had excused the juror, defense counsel moved for a mistrial, arguing that the defense should have been given the opportunity to question the juror.

The trial court's inquiry consisted of a few questions establishing that the juror felt unable to be fair and impartial. We agree with Jackson that the better course of action for the trial court would have been to allow the parties to question the juror, at a minimum to confirm whether the factual predicate of her concern—that she was a teacher of a nephew of Jackson's—was true. *See Harris v. State*, 659 N.E.2d 522, 525 (Ind.1995) (juror was questioned by trial court and both parties before being dismissed); *Threats v. State*, 582 N.E.2d 396, 398 (Ind.Ct.App.1991) (same).

■ Jackson argues that excusing this juror violated Trial Rule 47(B), which provides for replacement when a juror is "unable or disqualified to perform" his or her duties. Jackson does not allege that the trial court's decision to dismiss the juror resulted in the impaneling of a biased juror. Rather, he alleges that the procedure the trial court followed was reversible error because it did not allow him to question the juror who was dismissed. However, because no objection was lodged to this procedure before the juror had been dismissed, that issue is not preserved, and the only issue for appeal is whether a mistrial was required.

■ The decision to grant or deny a motion for a mistrial lies within the discretion of the trial court. *Heavrin v. State,* 675 N.E.2d 1075, 1083 (Ind.1996). A mistrial is an extreme remedy granted only when no other method can rectify the situation. *Id.* On appeal, in order to succeed from the denial of a mistrial, the defendant must demonstrate that the conduct complained of was so prejudicial that it had a probable persuasive effect on the jury's decision. *See James v. State,* 613 N.E.2d 15, 22 (Ind.1993); *Kelley v. State,* 555 N.E.2d 140, 141 (Ind.1990). At the time Jackson moved for a mistrial, the trial court's only alternatives were to send an already impaneled jury home or to deny the motion. Because there was no showing of any prejudice to Jackson, the trial court did not abuse its discretion in denying Jackson's motion.[1]

## II. Cross–Examination Regarding Prior Battery

Prior to trial, Jackson filed a request for notice of any proposed Rule 404(b) evidence. The State responded by announcing its intention to introduce evidence that Jackson had been arrested for committing a battery on Debbie in August 1996. Jackson filed a motion in limine, requesting that the evidence be excluded. The trial court concluded that, given Jackson's contention that the killing was accidental, the evidence was relevant to prove motive. The trial court nevertheless ruled that the evidence should be excluded under Evidence Rule 403 because the danger of unfair prejudice substantially outweighed its probative value. The trial court then stated that, although the State would not be allowed to use the evidence in its case-in-chief, the evidence could have some "rebuttal value" and the issue might need to be revisited.

■ On direct examination, Jackson testified to his love for Debbie throughout their twenty-one years of marriage, and to his love for her on the day he shot her. On cross-examination, the State asked him if had also loved his wife on March 3, 1996.[2] Defense counsel objected, and at a hearing outside the presence of the jury, the State argued that evidence of the battery was admissible to rebut Jackson's contention that he had always loved his wife. The trial court agreed that "the statement by the defendant that he loved his wife every day of their marriage calls in the question of that relationship so I will overrule the objection." Jackson challenges admission of that evidence.

■ Under Evidence Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in

---

1. Jackson also alleges that the trial court should have admonished or interrogated the remaining jurors to determine whether the dismissal of the juror affected the other jurors' ability to serve. Jackson did not request that the trial court do so and has waived this argument on appeal. *Cf. Hackett v. State,* 716 N.E.2d 1273, 1276 (Ind.1999) (argument regarding trial court's failure to question or admonish remaining jurors as to impact of one juror seeing defendant in orange jumpsuit was waived where no request for questioning or admonishment was made).

2. March 3 was the wrong date. The date of the alleged battery was August 3.

conformity therewith .... [but] may, however, be admissible [to prove] motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." In order to admit 404(b) evidence, the court must (1) determine that the evidence is relevant to a matter at issue other than the defendant's propensity to commit the charged act, and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403. *Byers v. State,* 709 N.E.2d 1024, 1026–27 (Ind.1999); *Hicks v. State,* 690 N.E.2d 215, 222–23 (Ind.1997). This balancing is reviewed for an abuse of discretion. *See Byers,* 709 N.E.2d at 1026–27; *Hicks,* 690 N.E.2d at 223. In addition, otherwise inadmissible evidence may become admissible where the defendant "opens the door" to questioning on that evidence. *See Gilliam v. State,* 270 Ind. 71, 76, 383 N.E.2d 297, 301 (1978).

Jackson cites *Gilliam,* in which this Court held that "the evidence relied upon to 'open the door' must leave the trier of fact with a false or misleading impression of the facts related." 270 Ind. at 76–77, 383 N.E.2d at 301. According to Jackson, because there was other evidence that demonstrated that Jackson's marriage to Debbie was not always peaceful, and because he merely "professed his love" for Debbie, the jury was not left with a false impression that they did not have marital conflicts, and evidence of the battery was inadmissible.

The trial court acted well within its discretion in making the pretrial determination that although the battery was relevant to establish motive, the prejudice from admitting the battery outweighed its probative value. It was also well within the discretion of the trial court to determine that the unfair prejudice to Jackson did not substantially outweigh the relevance of the battery and allow this evidence as

cross-examination on the point of Jackson's professed love for his wife. Although it was clear that the Jacksons' marriage was imperfect, cross-examination on the battery was nevertheless relevant to rebut the suggestion, or the "false impression," that Jackson would not knowingly or intentionally harm someone he loved.[3]

### III. Impeachment on Collateral Issue

Deputy Larry Keller, the first person to arrive at the Jackson home after the shooting, found Jackson holding Debbie's head in an attempt to stop the bleeding. At trial, Keller was cross-examined regarding a conversation Keller had with Jackson's sister in which he allegedly surmised that the shooting was accidental:

Q. Subsequently calling your attention to July 11th, 1998, did you tell his sister, Karen Lubovich, that you thought that this was an accident?

A. I told ... let me try that again ... I told her I was not sure.

Q. On July 11th, 1998, you told her you weren't sure.

A. I don't recall the date. I remember talking to her.

Q. But my question is did you tell her you thought it was an accident?

A. I don't recall.

Jackson argues that the trial court erred in refusing to allow defense counsel to call Lubovich for the purpose of impeaching Keller's testimony with a prior inconsistent statement. The State responds that Lubovich's testimony would have constituted impeachment on a collateral matter, and that this is impermissible under Indiana Evidence Rule 613(b). That Rule provides: "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny

---

**3.** Jackson also argues that because the State had already played the tape of Jackson's statement to Deputy Keller in which he professed his love for Debbie before Jackson testified, the State was attempting to "open the door"

to the battery. However, the State cross-examined Jackson regarding the battery only after Jackson testified at trial to his love for Debbie.

the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." Impeachment on collateral matters was impermissible under Indiana decisional law before the adoption of the Rules of Evidence. *See, e.g., Smith v. State*, 455 N.E.2d 346, 354 (Ind.1983). Impeachment by extrinsic evidence of a prior inconsistent statement on a collateral matter is also barred under Rule 613(b) of the Federal Rules of Evidence, which is identical to the Indiana Rule. *See* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 613.05[1] (2d ed.2000); *United States v. Beauchamp*, 986 F.2d 1, 3–4 (1st Cir.1993) ("[W]hen a witness testifies to a collateral matter, the examiner 'must take [the] answer,' i.e., the examiner may not disprove it by extrinsic evidence.") (citations omitted). Although we have not had occasion to address impeachment on collateral matters since the adoption of the Indiana Rules of Evidence, we see no reason to depart from the well established common law rule that this is barred. *See* 13 Robert Lowell Miller, Jr., *Indiana Practice* § 613.209 (2d ed. 1995) ("Rule 613 does not authorize use of extrinsic evidence of prior inconsistent statements to impeach a witness on collateral matters.").

 Assuming Keller's prior statement to Lubovich was inconsistent with his trial testimony, we agree with the State that whether or not Keller had ever expressed the belief that the killing was accidental was a collateral matter. It is also irrelevant. The inconsistency is as to whether Keller made the statement to Lubovich. Keller did not and could not properly testify on direct as to either (1) his belief that the shooting was accidental or (2) the underlying fact that it was ˙an accident. Jackson would have Keller's prior conversation admitted to establish one or both of these propositions. Whether he made the statement is in itself wholly collateral. Keller's belief—as opposed to any fact that Keller observed that might bear on the issue—is irrelevant. And his testimony that the shooting was accidental is equally inadmissible because it is an expression of opinion as to intent, which is barred by Indiana Evidence Rule 704(b). Because Keller could not properly testify as to these propositions, impeachment on either would have been inappropriate. *See Beauchamp*, 986 F.2d at 3–4 ("[E]xtrinsic evidence to disprove a fact testified to by a witness is admissible when it satisfies the Rule 403 balancing test and is not barred by any other rule of evidence."). The trial court did not abuse its discretion in refusing to allow Lubovich's testimony on this non-issue.

## IV. Sufficiency of the Evidence

 Jackson admits that he killed his wife, but asserts that the evidence was insufficient to prove that it was a knowing or intentional killing. The standard for reviewing sufficiency of the evidence claims is well settled. We do not reweigh the evidence or judge the credibility of the witnesses. *Harrison v. State*, 707 N.E.2d 767, 788 (Ind.1999). We will affirm the trial court if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Bunch v. State*, 697 N.E.2d 1255, 1257 (Ind.1998).

 Murder is the "knowing[ ] or intentional[ ] kill[ing][of] another human being." Ind.Code § 35–42–1–1 (1998). Jackson was charged with knowingly killing Debbie. Under Indiana Code § 35–41–2–2(b), "[a] person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." To kill knowingly is to engage in conduct with an awareness that the conduct has a high probability of resulting in death. *Lyttle v. State*, 709 N.E.2d 1, 3 (Ind.1999). A knowing killing may be inferred from the use of a deadly weapon in a manner likely to cause death. *Barker v. State*, 695 N.E.2d 925, 931–32 (Ind.1998).

The morning of the shooting began with an argument between Jackson and Debbie. Jackson testified that he "might have" threatened his wife, that he was looking for the gun "to scare her," and that the gun was loaded. He also testified that he "might have" thrown her against the kitchen door during the course of the argument. According to his testimony, he took the gun, cocked it and aimed it toward the ceiling. He then lowered the gun and it discharged while pointed at his wife's head. The jury was free to disbelieve Jackson's testimony that the discharge was an accident. The jury also could have concluded that Jackson acted with an awareness of the probable consequences of his actions.[4] Thus, on either basis, a reasonable jury could have concluded that the evidence was sufficient to find Jackson guilty of murder beyond a reasonable doubt.

## V. Sentencing

Jackson argues that the trial court abused its discretion in failing to find significant mitigating circumstances supported by the record and in imposing the presumptive sentence, despite identification of two mitigating circumstances and no aggravating ones.

 It is well established that sentencing decisions lie within the discretion of the trial court. *Echols v. State,* 722 N.E.2d 805, 808 (Ind.2000). When a trial court imposes the presumptive sentence, on appeal this Court presumes that the trial court considered the proper factors in making its sentencing determination. *Jones v. State,* 698 N.E.2d 289, 291 (Ind. 1998). When a court identifies aggravating or mitigating circumstances, however,

it is obligated to include a statement of its reasons for selecting the sentence imposed. *See* Ind.Code § 35–38–1–3 (1998); *Jones,* 698 N.E.2d at 291; *Widener v. State,* 659 N.E.2d 529, 533 (Ind.1995) (citing *Hammons v. State,* 493 N.E.2d 1250, 1254 (Ind.1986)); *Townsend v. State,* 498 N.E.2d 1198, 1201 (Ind.1986). This statement of reasons must contain three elements: (1) identification of all significant mitigating and aggravating circumstances; (2) the specific facts and reasons that lead the court to find the existence of each such circumstance; and (3) reflection of an evaluation and balancing of the mitigating and aggravating circumstances in fixing the sentence. *Widener,* 659 N.E.2d at 533 (citing *Hammons,* 493 N.E.2d at 1254); *Townsend,* 498 N.E.2d at 1201.

 Jackson points to the following mitigating circumstances: lack of a criminal history; employment; aid to the victim following the shooting; remorse; cooperation with authorities; undue hardship for his family from imprisonment; and the pleas for leniency from Jackson's immediate and extended family (including the victim's father). The trial court mentioned only the first two in its sentencing statement:

> Reading the pre-sentence report you don't have any previous criminal record and you have been employed. I certainly don't find any aggravating circumstances that is contemplated by the statute. But murder is a serious offense.[5] Pursuant to the statute, I'll sentence you to the Indiana Department of Corrections for (55) fifty-five years.

 The imposition of a presumptive sentence does not obligate the trial court

---

4. Jackson cites *Horne v. State,* 445 N.E.2d 976 (Ind.1983), for the proposition that, in order to be guilty of a knowing or intentional murder, the State was required to prove beyond a reasonable doubt that his act was "purposeful," i.e., "the product of a conscious design, intent or plan that it be done, and ... done with an awareness of the probable consequences." *Id.* at 979. To the extent this language implies that murder requires a high-

er mens rea standard than "knowing" as elaborated in the more recent cases, it is not current law.

5. The fact that "murder is a serious offense" is not a valid aggravating circumstance; it is inherently accounted for by the legislature in setting the maximum and minimum sentences.

to provide a detailed sentencing statement. *See Jones*, 698 N.E.2d at 290. Here, however, the trial court identified two mitigating circumstances and thus was required to state its reasons for imposing the sentence it did. This requirement is intended to ensure that the trial court considered proper matters in determining the sentence and facilitates meaningful appellate review of the reasonableness of the sentence. *See Hammons*, 493 N.E.2d at 1254. The only review this Court could undertake on a record like the one provided here would be purely speculative. Because there is no basis for this Court to determine whether the trial court properly weighed the aggravating circumstances against the mitigating circumstances, we remand to the trial court for resentencing on this record.[6]

### Conclusion

We affirm the conviction for murder and remand for resentencing on this record.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.

---

6. Jackson makes two other arguments we decline to address because of the remand. Jackson argues that the trial court failed to find significant mitigating circumstances that were supported by the record. On remand, the trial court should consider the mitigating circumstances proffered by Jackson in the record and listed here, as well as any aggravating circumstances. The contention that the sentence is manifestly unreasonable is moot.