Gregory L. POPE, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 77A05–0003–CR–118.

Court of Appeals of Indiana.

Dec. 28, 2000.

William E. Daily, Danville, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Today we confront the task of construing various provisions of our child exploitation statute. Appellant-defendant Gregory Pope appeals his conviction for Child Exploitation,[1] a class C felony, and Possession of Child Pornography,[2] a class A misdemeanor. Specifically, he asserts that the trial court erred in permitting the State to offer evidence of uncharged "bad acts" and that the evidence was insufficient to support the convictions. Pope also asserts that he was improperly sentenced.

### FACTS

The facts most favorable to the verdict are that the Cook County Sheriff's Department in Illinois had a special child exploitation unit that investigated child pornography and other instances of child sexual exploitation on the internet. On August 28, 1998, Detective William Plahm of the Sheriff's Department entered a "chat room" on the internet known as "Kinky Pre-teen Sex." Record at 663. While on-line, Detective Plahm assumed the identity of a thirteen-year-old female and used the screen name, "Nikki 13." R. at 663.

Pope, who resided in Brazil Indiana, eventually contacted the detective on his home personal computer under the user name of "Mnight." R. at 663. During the course of the "chat," Pope asked whether Nikki 13 had "ever seen a man's c - - k" and further inquired as to whether she would like to "see some pics of girls doing it with men." R. at 665. Pope proceeded to send photos of young girls performing fellatio and engaging in sexual intercourse to Nikki 13 over the internet. He then offered to "teach" Nikki 13 how to perform such acts. Pope suggested that they continue corresponding by email with the intention of eventually meeting in person.

As a result of these transmissions, Detective Plahm learned Pope's internet service provider number, state of residence, age, email address and physical description. Detective Plahm and Pope continued emailing each other until January 23, 1999. On that day, Pope sent Detective Plahm, a/k/a Nikki 13, his home telephone number. Cook County Sheriff's Deputy Janet Monticelo then called Pope posing as Nikki 13. Deputy Monticelo was chosen to play the part of Nikki 13 because she has the voice of a much younger person, is physically small and looks very young. R. at 727. As a result of their conversation, Deputy Monticelo and Pope arranged to meet at an Illinois Holiday Inn on the evening of January 23. Near the end of the conversation, Detective Monticelo remarked to Pope that "I wish I was twenty years old, but I'm only thirteen." R. at 816.

A number of Cook County deputies set up surveillance at the Holiday Inn. At one point, Pope walked into the hotel, looked at Deputy Monticelo and went to his hotel room. Deputy Monticelo then telephoned Pope in his room and he indicated the

---

1. IND. CODE § 35–42–4–4(b)(2).

2. I.C. § 35–42–4–4(c).

desire to meet her on the second floor. When Pope greeted Deputy Monticelo, two other police officers approached, detained Pope, and transported him to Cook County Police headquarters. After being advised of his rights, Pope admitted to the officers that he planned on having sex with the thirteen-year-old girl if she consented. The officers informed Pope of the photographs they had received from an individual using the screen name "Mnight," and asked Pope if he had sent the emails to Nikki 13. Pope admitted that he had sent the emails and the pictures. R. at 783, 788.

The Cook County Police Department then notified the Indiana State Police and a search warrant was obtained for Pope's home. After the police completed an examination of Pope's home computer, approximately twenty-six photographs of children having sex or posing in sexually explicit positions were discovered on the computer's hard drive.

As a result, Pope was charged with the two offenses set forth above. Pope filed a pretrial motion in limine seeking exclusion of any evidence of his interactions with Detective Plahm, except for that communication which had occurred during the August 28, 1998 "chat." R. at 85. Pope also requested the exclusion of all evidence relating to the events that occurred at the Holiday Inn, as well as Deputy Monticelo's testimony. R. at 86–87. The trial court denied the motion in limine.

At Pope's jury trial, the State introduced evidence of the events that occurred at the Holiday Inn, the questioning by the Cook County law enforcement officers and the email and internet interactions that occurred between Detective Plahm and Pope. Notwithstanding Pope's objections to this evidence, the trial court permitted the evidence to be admitted in order to establish Pope's identity as "Mnight."

At the conclusion of the trial on January 26, 2000, Pope was found guilty on both counts and received a four-year sentence with one year suspended for child exploita-tion. He was also sentenced to one year for possessing child pornography which was ordered to run consecutively with the child exploitation conviction. Thus, he was sentenced to an aggregate term of four years, the presumptive term for a class C felony. Pope now appeals.

## DISCUSSION AND DECISION

### I. Admission of Evidence

■ Pope contends that the trial court erred in admitting evidence of other uncharged "bad acts" at trial. Specifically, he asserts that his convictions must be reversed because the trial judge erroneously admitted evidence with respect to the meeting at the Illinois Holiday Inn and his communications with Detective Plahm.

■ To resolve this issue, we first note that the trial court is vested with broad discretion in ruling on the relevancy of evidence and will be reversed only for an abuse of discretion. *Marcum v. State*, 725 N.E.2d 852, 862 (Ind.2000). Additionally, we note that Ind. Evidence Rule 404(b) provides in relevant part as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

■ This rule excludes evidence when it is introduced to prove the "forbidden inference" of demonstrating a defendant's propensity to commit the charged crime. *Sanders v. State*, 724 N.E.2d 1127, 1130 (Ind.Ct.App.2000). We note, however, that evidence of uncharged misconduct which is "inextricably bound up" with the charged offense is properly admissible under Evid. R. 404. *Id.*

■ Next we note that an analysis of admissibility under Evid. R. 404(b) necessarily incorporates the relevancy test of

Ind. Evidence Rule 401 and the balancing test of Ind. Evidence Rule 403. *Sanders v. State,* 704 N.E.2d 119, 123 (Ind.1999). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Utley v. State,* 699 N.E.2d 723, 727–28 (Ind.Ct.App.1998), *trans. denied.* Only where the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence will that evidence be excluded. Evid. R. 403. The trial court has wide latitude in weighing the probative value of the evidence against the possible prejudice of its admission. *Sanders,* 704 N.E.2d at 124.

In the instant case, we note that Pope's defense at trial was that someone else had sent the photographs from his computer without his knowledge. R. at 1014. The testimony regarding the circumstances of his meeting with Deputy Monticelo at the Holiday Inn was offered to show that Pope went there to teach "Nikki 13" how to have sex. Put another way, this testimony demonstrated that Pope's motive for sending the pornographic photographs to "Nikki 13" was to seduce her into meeting him to have sex. *Cf. Spencer v. State,* 703 N.E.2d 1053, 1056 (Ind.1999) (evidence of defendant's prior assaults and confrontations with the victim were admissible to show the hostile relationship between the parties as a motive for the murder).

We also note that Pope denied having sent any photographs to "Nikki 13" or having met her in the chat room on August 28, 1998. Pope testified at trial that he had no knowledge of how the photographs had been generated on his home computer. As set forth in the *FACTS*, it is apparent that "Mnight" sent the photographs to "Nikki 13" on August 28, 1998, after asking "Nikki 13" if she wanted him to teach her how to have sex. R. at 694–97. Thus, Pope's statements and behavior when he encountered Detective Monticelo, who was chosen for the assignment because of her youthful appearance, was relevant to prove that it was indeed Pope who had sent the photographs to "Nikki 13" under his user name of "Mnight."

While Pope also maintains that the evidence was erroneously admitted because it was overly prejudicial, the evidence was highly probative in showing that Pope was the "Mnight" that sent the photographs. The evidence pertained to Pope's actions in response to the internet correspondence that is "inextricably intertwined" with or "part and parcel" of the charges against him. *See Sanders,* 724 N.E.2d at 1131. We cannot say that the evidence was offered only to create an inference that Pope is a person of bad character. Rather, the evidence was highly probative of Pope's identity and his purposeful transmission of the pornographic photographs.

Inasmuch as the evidence was highly probative of Pope's perpetration of the charged offense, we decline to hold that the danger of unfair prejudice that may have inured to Pope substantially outweighed the probative value of the evidence in these circumstances. Thus, there was no error in the admission of this evidence.

## II. Sufficiency of the Evidence

Pope next claims that the evidence was insufficient to support his convictions. Specifically, he contends that the State failed to introduce sufficient evidence demonstrating that Pope was the individual who sent the photographs via the internet or that he was the person who possessed the pictures.

When reviewing sufficiency claims, this court neither weighs the evidence nor judges the credibility of witnesses. *Miller v. State,* 693 N.E.2d 602, 604 (Ind.Ct.App. 1998). We consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom. *Id.* If substantial evidence of probative value supports the conclusion that the de-

fendant is guilty beyond a reasonable doubt, we will affirm the conviction. *Bethel v. State*, 730 N.E.2d 1242, 1244 (Ind. 2000).

To convict Pope of class C felony child exploitation, the State was required to prove beyond a reasonable doubt that he: 1) knowingly or intentionally; 2) disseminated or exhibited to another person photographs of sexual conduct by a child under eighteen years of age; 3) by using a computer network. I.C. § 35–42–4–4(b)(2). Similarly, I.C. § 35–42–4–4 makes it a class A misdemeanor to knowingly or intentionally possess a photograph that depicts or describes sexual conduct by a child who is less than sixteen years of age or appears to be less than sixteen and that lacks serious literary, artistic, political or scientific value.

At trial, U.S. Customs Agent Tom Rothrock testified that Pope admitted transmitting the photographs over the internet. Pope recognized a number of photographs that were shown to him by another officer as those he had sent to the Sheriff's Department in Illinois. R. at 904–05. The State also presented several photographs that Pope acknowledged with his initials as photos that he sent. R. at 800, 804–05. The photographs transmitted from Pope's computer depicted girls and boys under sixteen years of age[3] engaging in sexual acts involving vaginal penetration, fellatio and genital exposure. R. at 855, 857, 860, 862, 864–66, 868–73, 876, 878.

As set forth in the *FACTS*, Detective Plahm testified that Pope sent him the photographs during the "chat room" conversation on August 28, 1998. He determined Pope's internet service provider, his age, email address and physical description as a result of those communications. This evidence, along with that recited above, was sufficient to prove beyond a reasonable doubt that Pope committed the offense of Child Exploitation as a class C felony. Thus, we reject Pope's claim that

the State failed to present sufficient identification evidence establishing that he had sent the photographs. Such a contention amounts to a forbidden invitation for this court to reweigh the evidence.

■ We also note that the evidence was sufficient to convict Pope of possession of child pornography, inasmuch as the state demonstrated that he was aware that the photographs had been saved to his computer's memory. A specialist with the Indiana State police examined Pope's computer and discovered twenty-six photographs of children having sex or in sexually explicit poses. At trial, the specialist testified it was unlikely that the files had been downloaded inadvertently. R. at 937. He also remarked that it was virtually impossible for those files to have been placed on Pope's hard drive by a hacker from another network. R. at 937.

Thus, even without Pope's admission that he possessed and sent the pornographic photographs, it is apparent that the circumstances established by the forensic examination of Pope's computer, Detective Plahm's testimony with respect to the ongoing email correspondence and Deputy Monticelo's testimony regarding the telephone conversation with Pope and her meeting with him, permitted the jury to infer that Pope knowingly possessed the child pornography. As a result, the convictions may stand.

### III. Sentencing

Finally, Pope claims that the sentence was erroneous. Specifically, he maintains that the trial court impermissibly determined that two aggravating circumstances existed. Thus, Pope urges that it was error to impose consecutive sentences and the cause should be remanded for a new sentencing hearing.

■ We initially observe that sentencing decisions rest within the sound discretion of the trial court, and we will

---

**3.** A physician testified for the State that, in his opinion, nearly all of the children in the pho-

tographs were under the age of sixteen. R. at 912–18.

review sentencing only for an abuse of that discretion. *Archer v. State*, 689 N.E.2d 678, 683 (Ind.1997). We will not revise a sentence that is legislatively authorized by statute unless the sentence is manifestly unreasonable. *Ladd v. State*, 710 N.E.2d 188, 192 (Ind.Ct.App.1999). When reviewing a sentence for such unreasonableness, this court determines if the sentence appears to be disproportionate in light of the nature of the offense and the character of the offender. *Weaver v. State*, 676 N.E.2d 22, 24 (Ind.Ct.App.1997), *trans. denied.* Inasmuch as the sentencing process is inherently subjective, this court does not substitute its own judgment for that of the trial court in determining whether a sentence is manifestly unreasonable. *Hurt v. State*, 657 N.E.2d 112, 114 (Ind.1995). Thus, a defendant must show that the trial court's determination that the aggravating circumstances outweighed the mitigating circumstances was a manifest abuse of discretion or, in other words, that his total sentence is "clearly, plainly, and obviously" unreasonable. *Thacker v. State*, 709 N.E.2d 3, 10 (Ind.1999).

We next observe that a trial judge may not engage in a mere perfunctory recitation of the statutory aggravating factors when enhancing a sentence. Rather, he must articulate reasons for imposing a sentence only when deviating from the statutory presumptive sentence. *Jones v. State*, 698 N.E.2d 289, 290 (Ind.1998); *Battles v. State*, 688 N.E.2d 1230, 1236 (Ind. 1997). However, a trial court is not obligated to set forth its reasons for imposing the presumptive sentence. *Williams v. State*, 676 N.E.2d 1074, 1078 (Ind.Ct.App. 1997). We presume that the trial court considered the proper factors in making its sentencing determination. *Jackson v. State*, 728 N.E.2d 147, 154 (Ind.2000).

When aggravating or mitigating circumstances are identified, the trial court must include a statement of its reasons for selecting the sentence imposed. IND. CODE § 35-38-1-3. The following must be included: 1) identification of all significant mitigating and aggravating circumstances; 2) the specific facts and reasons that led the court to find the existence of each such circumstance; and 3) reflection of an evaluation and balancing of the mitigating and aggravating circumstances in fixing the sentence. *Jackson,* 728 N.E.2d at 154. We also note that when a trial court determines that rehabilitation of the defendant can best be provided by commitment to a penal facility to justify an enhanced sentence, a specific statement should be provided as to why the defendant needs treatment for a period of time longer than the presumptive sentence. *Walter v. State*, 727 N.E.2d 443, 447 (Ind.2000).

In the instant case, the trial court sentenced Pope to the presumptive term for a class C felony, yet identified the following aggravating circumstances: 1) the imposition of a reduced sentence would depreciate the seriousness of the offense; and 2) Pope was in need of rehabilitative treatment that could best be provided by commitment to a penal facility. R. at 1131. The trial court also noted the following mitigating circumstances: 1) that Pope had led a law-abiding life prior to committing these offenses in that he had no criminal history; and 2) sentencing Pope to a term of imprisonment would result in a hardship to his dependents. R. at 1131. Upon weighing these circumstances, the trial court concluded that the mitigating factors had outweighed the aggravating factors. R. at 1131.

Contrary to Pope's contention that such aggravators were improper, the trial court was not obligated to explain why he required treatment for a period longer than the length of the presumptive sentence. Even so, we note that the suspension of one year with respect to Pope's conviction on the child exploitation count demonstrated that the trial court was considering reduced penalties at the sentencing hearing. Moreover, it is apparent that the trial court's determination that Pope needed

treatment best provided in a penal facility reflects that the trial court considered ordering less than the presumptive sentence and permitting Pope to seek rehabilitation on his own or as a condition of probation. Specifically, the trial court explained its finding by commenting that Pope needed to address his proclivity for child pornography as a result of his failure to acknowledge that he had a problem. R. at 1130–31. Thus, the trial court's statement that rehabilitation in a penal facility was needed for the length of the presumptive term, along with the one-year suspension on the class C felony conviction, shows that the trial court considered a term less than the presumptive sentence. As a result, there was no error in sentencing.

## CONCLUSION

In light of our disposition of the issues set forth above, we conclude that the trial court properly admitted evidence of Pope's meeting with Deputy Monticelo and the communications he had with Detective Plahm. Additionally, we note that the evidence was sufficient to support the convictions and that Pope was not improperly sentenced.

Judgment affirmed.

BROOK, J., and BARNES, J., concur.