Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED

Apr 18 2012, 8:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRYAN M. TRUITT**
Bertig & Associates, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**NICOLE M. SCHUSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON A. REBER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 64A04-1107-CR-408 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PORTER SUPERIOR COURT
The Honorable David L. Chidester, Judge
Cause No. 64D04-1003-FD-2565
Cause No. 64D04-1003-CM-2940

**April 18, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Jason A. Reber ("Reber") appeals his convictions for Domestic Battery, as a Class A misdemeanor,[1] and Interference with Reporting a Crime, a Class A misdemeanor.[2] We affirm.

**Issues**

Reber presents two issues for review:

I.    Whether the trial court abused its discretion by allowing testimony from a family violence consultant; and

II.   Whether the trial court abused its discretion by excluding relevant impeachment evidence.

**Facts and Procedural History**

On March 11, 2010, Reber and his then-fiancé, Lisa Govea ("Govea"), went out to celebrate Reber's birthday and returned home under the influence of alcohol. At Reber's request, Govea left to buy cigarettes for Reber; however, when she was in the store, she realized that her purse was missing. Govea contacted Reber, who became angry about having to call a bartender to search for the purse. He began to call Govea stupid and make vulgar references.

After the purse was located, Govea went to sleep. She was awakened by water in her face; Reber was screaming and accusing Govea of hitting him as she slept. In an effort to avoid conflict, Govea went into her son's room to sleep. However, Govea was soon

---

[1] Ind. Code § 35-42-2-1.3.
[2] Ind. Code § 35-45-2-5.

awakened to the sound of Reber kicking in the door. He again threw water in Govea's face while calling her vulgar names.

Govea responded that she would go to a friend's house until Reber "sobered up." (Tr. 44.) Reber refused to let Govea leave; he grabbed Govea by the neck and dragged her into the kitchen. The dog began to growl and snap, but Reber kicked the dog away and pushed Govea into a bedroom. She saw a cell phone, grabbed it, and called 9-1-1. However, Reber snatched the phone away saying "they are not going to come unless [Govea] was dead." (Tr. 47.)

Reber began to kick Govea, who was on the floor after the struggle over the phone. Reber kicked Govea until she vomited on the floor. At one point, she ran to a window and partially escaped, while screaming for help, but Reber dragged her back into the house. Reber then "slammed" Govea into a dresser. (Tr. 49.) He began to squeeze her neck.

Govea apparently lost consciousness, having no further recollection until she awoke, face down on the bed, and realized that she had vomited in her hair and had urinated on herself. Reber assisted Govea with taking a shower. When Govea complained that she could not feel her arm, and feared that it was broken, Reber told her that she was over-reacting. He produced Xanex and Tylenol, and insisted that Govea take them.

The next day, Reber's child arrived for parenting time. While Reber was otherwise occupied, Govea quickly texted her friend, Angela Simic ("Simic") and complained that she had been hurt in a fight with Reber, but asked Simic not to intervene. Simic decided to "leave it alone" because she didn't want to make matters worse. (Tr. Vol. II, 45.) Reber

3

dressed Govea and took her and his child to a birthday party for Simic's child. According to Simic, Govea came in, sat in a chair by the door, could barely move, and was "not herself." (Tr. Vol. II, 44.) Govea did not tell her friend's husband that she had been beaten.

On March 14, Govea convinced Reber to allow her to go to a bridal shower. Before the shower, the couple went to pick up a cake. Once in public, Govea again did not report the battery. Govea was able to attend the shower alone, albeit with instructions that she call Reber upon arriving, leave her phone line open, have a friend transmit a photo of Govea at the shower, and call Reber upon leaving. Govea did not seek help from the shower guests.

After the shower, Govea went home and got in bed. Reber again gave Govea medication, which she pretended to swallow. She pretended to be asleep as Reber left to take his daughter home. Govea got up, went to her car, and contacted Simic. Simic convinced Govea to come to her house. After Simic and her husband saw the extent of Govea's injuries, they took her to Porter County Hospital. Govea was examined and found to have multiple contusions, but did not have breaks or fractures of her bones.

Reber was arrested and interviewed by Valparaiso police officers. He admitted that he had pushed Govea into the dresser, but claimed that he had acted in self-defense. He also admitted that he might have interfered with her calling for 9-1-1 assistance, and that he had received a message from 9-1-1 on his cell phone the following day.

On March 15, 2010, the State charged Reber with Strangulation, a Class D felony,[3] Domestic Battery, and Interference with Reporting of a Crime. Reber was later charged with

---

[3] Ind. Code § 35-42-2-9.

4

Invasion of Privacy, as a result of his solicitations of relatives to contact Govea. On June 27, 2011, Reber was brought to trial before a jury. During the trial, he pled guilty to Invasion of Privacy. The jury found him not guilty of Strangulation and guilty of the remaining charges. On July 5, 2011, the trial court sentenced Reber to a three-year aggregate term of imprisonment, with six months suspended to probation. He now appeals.

**Discussion and Decision**

I. Testimony of Intimate Partner Violence

Reber contends that the trial court improperly allowed vouching testimony from Dottie Davis ("Davis"), a Fort Wayne Police Department employee who conducts training sessions on family violence. Davis was allowed to testify as a skilled witness regarding general characteristics of a relationship involving intimate partner violence; she was prohibited from addressing particular facts of this case. The jury was instructed that her testimony was not evidence of abuse to Govea.

Generally, a trial court's ruling on the admission or exclusion of evidence is a matter within the sound discretion of the trial court. Hape v. State, 903 N.E.2d 977, 991 (Ind. Ct. App. 2009), trans. denied. We afford the evidentiary decision great deference upon appeal and reverse only when a manifest abuse of discretion denies the defendant a fair trial. Collins v. State, 826 N.E.2d 671, 677 (Ind. Ct. App. 2005), trans. denied. An abuse of discretion has occurred when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Id.

Indiana Evidence Rule 702 provides that a witness may be qualified as an expert by

5

virtue of the witness's "knowledge, skill, experience, training, or education." In particular, our Indiana Supreme Court has held that expert witness testimony of battered women's syndrome is admissible provided it is relevant. Isaacs v. State, 659 N.E.2d 1036, 1041 (Ind. 1995). Under Evidence Rule 401, "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Reber claims that Davis's testimony is irrelevant because there was no evidence of a pattern of domestic violence and Govea did not recant her allegations, so as to suggest that Govea was a victim of battered women's syndrome. Accordingly, Reber argues that the testimony served only to improperly bolster Govea's credibility.

The State responds that Reber "opened the door" to Davis's testimony when he cross-examined Govea at length as to why she did not seek assistance at an earlier juncture. Otherwise inadmissible evidence may become admissible where the defendant "opens the door" to questioning on that evidence. Jackson v. State, 728 N.E.2d 147, 152 (Ind. 2000). The evidence relied upon to "open the door" must leave the trier of fact with a false or misleading impression of the facts related. Id.

Reber's counsel questioned why Govea chose to text a friend instead of call 9-1-1, why she didn't leave in her vehicle as soon as Reber left the house, why she didn't report abuse to Simic and her husband at the birthday party, why she didn't call the police from the market where the cake was purchased, and why she didn't tell the shower guests of her plight. Reber suggested that it was illogical that Govea would be so desperate to escape that

6

she would "attempt to jump out of the window," but then fail to call 9-1-1 a day later when she was alone. (Tr. 133.) In response to various questions, Govea testified that Reber remained nearby after leaving the residence, he was monitoring her movements, she was afraid, and she did not want to provoke Reber's anger in the presence of children. She also testified that Reber refused her request to get medical treatment and kept her drugged.

In response, the State presented Davis's testimony, purportedly to educate the jurors on some of the complexities of relationships marked by intimate violence. Davis testified that such relationships involve a partner having an intense desire to exert power and control over the other partner and often the subjugated partner will exhibit learned helplessness. We find her testimony to be, at best, of marginal relevance.

There was no evidence that Reber had a history of perpetrating violence upon Govea. The record also supports his contention that Govea was not a reluctant or recanting witness. She was able to explain in detail her reasons for not seeking medical or police assistance sooner. On the other hand, Davis offered no opinion that either Govea's or Reber's actions fit the profile of a partner in domestic violence. She did not opine as to Govea's truthfulness or otherwise vouch for her credibility. She simply offered testimony that was not particularly helpful to the jury in these circumstances.

Although Davis's testimony was largely irrelevant, "[t]he improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." Lafayette v. State, 917 N.E.2d 660,

7

666 (Ind. 2009).

Here, we are confident that – in light of Govea's detailed testimony, the documentary evidence of her injuries, and Reber's own admissions – Reber's conviction is supported by substantial evidence of guilt independent of Davis's testimony.

## II. Restriction of Cross-Examination

Reber claims that he was denied his Sixth Amendment right to confront a witness against him when the trial court sustained the State's objections to his questioning Govea as to whether she disliked Reber's ex-girlfriend, and whether Govea had procured protective orders against other people.

A defendant's Sixth Amendment right of confrontation requires that the defendant be afforded an opportunity to conduct effective cross-examination of the State's witnesses. Kirk v. State, 797 N.E.2d 837, 840 (Ind. Ct. App. 2003), trans. denied. However, the right of confrontation is subject to the trial court's reasonable limitations in order to address concerns regarding harassment, prejudice, confusion, or interrogation upon issues of only marginal relevance. Id.

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and … [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked." Ind. Evidence Rule 103. "This offer to prove is necessary to enable both the trial court and the appellate court to determine the admissibility of the testimony and the prejudice which might result if

8

the evidence is excluded." <u>Wiseheart v. State</u>, 491 N.E.2d 985, 991 (Ind. 1986).

In argument before the trial court, Reber's counsel indicated that Govea had obtained protective orders against four separate people. However, assuming counsel had documentation of such protective orders, he did not proffer the documentation. Nor did he make an offer of proof by questioning Govea outside the presence of the jury as to the existence of the protective orders or the surrounding circumstances. Reber made no offer of proof concerning Govea's attitude toward Reber's ex-girlfriend. Accordingly, Reber failed to make an adequate offer to prove, so as to preserve the issue for appellate review.

**Conclusion**

Reber has not demonstrated that the trial court's evidentiary rulings denied him a fair trial.

Affirmed.

BAKER, J., concurs.

DARDEN, J., concurs in result with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

JASON A. REBER,                          )
                                         )
    Appellant-Defendant,             )
                                         )
      vs.                           )          No. 64A04-1107-CR-408
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.              )

**DARDEN, Judge, concurring in result**

Although I concur in the result, I do not agree that Davis's testimony was only marginally relevant. Here, Reber extensively cross-examined Govea regarding why she failed to seek assistance, despite several opportunities to do so. Given that the purpose of Davis's testimony was to explain the behavior of domestic-abuse victims, particularly the failure to seek help, I find her testimony to be relevant.