VAIDIK, Chief Judge,
dissenting.
[20] I respectfully dissent. I do so because the fact that Snow legally possessed a handgun on her own property that she did not use or brandish during her altercation with Officer Peck was not relevant to any issue in this case. And the admission of the gun, including the State’s inflammatory characterization of it as “unregistered” and “literally against the law,” was not harmless error. This case boiled down to Officer Peck’s word against Snow’s and the admission of the gun could have tipped the scales in favor of the State. I would therefore reverse and remand this case for a new trial.
[21] To begin, the State must prove that the handgun was relevant. Relevant evidence is evidence that tends to make more probable or less probable the existence of a fact that is of consequence in determining the action. Ind. Evidence Rule 401. The only argument of relevance that the State makes on appeal is that the gun was “inextricably bound up” with other evidence in this case. Appellee’s Br. p. 15. The majority does not use this language but begins its analysis by finding that the gun was admissible because it explained “the circumstances and context” of Snow’s altercation with Officer Peck. Op. at 1134-35. Either of the above justifications for the admission of the gun is misplaced.
[22] Historically, Indiana allowed evidence that was “part of the story” of a particular crime, or res gestae evidence. However, in Swanson v. State, our Supreme Court held that res gestae should no longer be used as a way to admit evidence:
At best, res gestae is an imprecise concept, and it has tended to be an all too easy substitute for describing the legal relevance of a particular piece of evidence. The term res gestae does not appear in our Rules of Evidence, and we believe that the admissibility of evidence is better tested by reference to the concepts found in those rules. In other words, is the evidence in question relevant in that it tends to make more probable or less probable the existence of some fact pertinent to the case? Evid. R. 401.
666 N.E.2d 397, 398 (Ind.1996), reh’g denied. The Court indicated that it “fully expect[ed] that the great majority of the evidence we formerly admitted by calling it res gestae will continue to be admitted in Indiana courts. It will be admitted, however, by reference to the legal concepts and vocabulary of the Indiana Rules of Evidence.” Id. at 399.
[23] Two years after the Supreme Court denounced res gestae as a basis to admit evidence, this Court determined that evidence was properly admitted because it was “inextricably bound up” with other evidence in the case. Utley v. State, 699 N.E.2d 723 (Ind.Ct.App.1998), trans. denied. In that case, a man was charged with reckless homicide and leaving the *1137 scene of an accident after running over another man with whom he had previously-been in an intimate relationship. The defendant was convicted of leaving the scene of an accident and appealed, arguing that the trial court abused its discretion in admitting evidence that he had previously been in an intimate relationship with the victim. The defendant claimed that the evidence of their relationship revealed his sexual orientation, which was irrelevant and exposed him to the danger of unfair prejudice. This Court, however, found that the fact that the defendant had previously been in an intimate relationship with the victim was admissible and that the defendant’s. sexual orientation, while not alone relevant, was “inextricably bound up” with the relevant relationship evidence:
The former intimate nature of Utley’s relationship with the victim was highly probative and relevant to explain the context of the argument which preceded the events which culminated in the victim’s death and any motive Utley may have had to harm the victim. That Utley’s sexual preference was disclosed through this evidence was merely incidental or collateral, but “inextricably bound up” with the crime charged. See State v. Lambert, 528 A.2d [890,] 892 [ (Me.1987) ] (evidence of defendant’s sexual preference “inextricably bound up” with the crime alleged).
Utley, 699 N.E.2d at 728-29 (emphasis added).
[24] Other panels of this Court have determined that evidence was properly admitted by using the “inextricably bound up” language from Utley. For example, in Sanders v. State, the defendant, who was charged with child molesting, argued that the tidal court abused its discretion in admitting evidence that earlier that same evening, he offered the victim and two of her friends $25 if they submitted to oral sex with him. This Court found that this evidence was “highly probative” and “inextricably bound up” with the charged crime. Sanders v. State, 724 N.E.2d 1127, 1131 (Ind.Ct.App.2000). .The fact that the defendant offered the victim $25 for oral sex is easily separable—not “inextricable”— from the fact that he molested the victim later that night. In addition, the fact was independently relevant to show that the defendant molested the victim later that night. See also Sandijur v. State, 815 N.E.2d 1042, 1048-49 (Ind.Ct.App.2004) (finding that victim’s death from methadone overdose was “inextricably bound up” with the charge against defendant for dealing methadone to her), trans. denied; Willingham v. State, 794 N.E.2d 1110, 1116 (Ind.Ct.App.2003) (using “inextricably bound up” language to support admission of evidence that defendant sold cocaine the week before he was arrested and charged with dealing in cocaine because it was “probative of [his] motive to sell the cocaine that the detectives found in his bedroom”); Pope v. State, 740 N.E.2d 1247, 1250-51 (Ind.Ct.App.2000) (using “inextricably bound up” language to uphold admission of fact that defendant met detective posing as minor at hotel to prove child exploitation and child pornography charges that were based on facts separate from hotel meeting). To the extent these decisions relied on the “inextricably bound up” language to support admission of the evidence, the reliance was dicta because the evidence was relevant on independent grounds. Notably, our Supreme Court has never adopted “inextricably bound up” as a basis for admissibility.
[25] In my opinion, language such as “inextricably bound up” or as the majority uses—“the circumstances and context” of Snow’s altercation with the officer—have become invitations to revive a defunct res gestae exception. The State accepts the invitation in this case by arguing in its *1138 brief that the sole relevance- of the handgun is that it is “inextricably bound up” with other evidence in this case.
[26] As for whether the handgun is otherwise relevant in this case, the majority develops an argument of relevance that was neither argued by the State on appeal nor argued by the State at the trial-court level. Initially, the State argued at the motion in limine hearing that the gun was relevant because it showed that Snow acted in an aggressive manner because she was- trying to conceal a weapon in her possession. See Tr. p. 9-10 (“THE GOURT: And your theory is that the aggressiveness on behalf of—I guess, let’s say—to be clear, we’re talking about Snow—is because she was—in your theory, at least—that she was trying to conceal a weapon in her possession? MR. MULLINS: Yes. I believe that would show more for an offensive rather than a defensive position, in terms of what happened with the scuffle.”). This explanation, however, defies common sense. If Snow was trying to hide her gun, why would she attack a police officer? Moreover, as the State conceded at the motion in limine hearing and as the majority notes on appeal, Snow legally possessed the gun. See id. at 3; op. at 1133-34 n. 2. Snow had no reason to conceal it.
[27] Then at trial, the State argued that the fact that Snow possessed (but did not use or brandish) an “unregistered” gun showed that she was the initial aggressor. Tr. p. 356. Notably, there is no handgun “registration” requirement in Indiana. See IN.gov, Frequently Asked Questions, http://iot.custhelp.com/app/answers/detail/ a—id/2198/kw/ ISPFirearms (last visited Dec. 20, 2016). Snow legally possessed the handgun on her own property. I cannot say that legally possessing a handgun on one’s own property, without using or brandishing it, tends to prove that the possessor is likely to have started a fight.
[28] The majority, on its own accord, finds that the gun is relevant because the fact that a concealed weapon fell from Snow during her struggle with Officer Peck has at least some tendency to show that, in light of the fact that she had entered and exited her house and dared Officer Peck to arrest her, she was the aggressor. Although the State appeared to indicate at the motion in limine hearing that there would be evidence at trial that Snow went into her house to retrieve the gun, see Tr. p. 7, no such evidence was presented at trial. In fact, the State argued at trial that Snow had the gun in her pocket the “entire” time. Id. at 347 (“The gun was never in her purse. It was in her pocket the entire time.”); see also id. at 355 (“It was never in the car. It was always in her pocket”). Because the evidence shows that Snow legally possessed a gun on her property that she did not use or brandish during her altercation with Officer Peck and that was not discovered until after she was handcuffed and led away from the scene, I do not believe that the gun was relevant to any fact at issue in this case. Accordingly, I believe that the trial court abused its discretion in admitting the gun into evidence.
[29] Moreover, I do not believe that the error in admitting the gun was harmless. As the State recognized during closing argument, there were “two stories” presented to the jury at trial. Id. at 345; see also id. at 361 (defense counsel: “We have two conflicting stories.”). These stories were essentially told by two people: Snow and Officer Peck. Snow’s theory was that Officer Peck used force against her first, that he did so unreasonably, and that she did what she had to do in order to protect herself. She supported her theory with evidence of her injuries, which required stitches and a trip to the hospital compared to the officer’s injuries of a few scratches and a bump to his forehead. In *1139 contrast, the State’s theory was that Snow was the aggressor and that Officer Peck only hit her in “self-defense.” Id. at 346. As evidence of its theory, the State relied heavily on the gun, including admitting the actual gun into evidence. Id. at 93-94. The State argued that because Snow possessed a gun that it claimed was “unregistered,” she was an aggressive person and therefore the initial aggressor in this case:
Ms. Snow testified that she has the gun for protection. My question is, if it’s for protection, why does she even have it? It’s just her and her boyfriend. I’m assuming she’s not taking it to the gas station because, as she said, it’s unregistered. It’s literally against the law. I’m assuming she doesn’t want to break any law. Now, protection, when it’s just her and her boyfriend in her driveway. That doesn’t sound like protection.
Additionally, she stated the gun is in her purse sitting on her front seat.... Are you going to believe that all the contents of the purse fell on the floor of the car except for one thing, the gun, which somehow fell outside of the car? ... Does that sound reasonable? No. The gun was never in her purse. It was in her pocket the entire time. She lied. And why lie, if the gun is for protection? If all you’re doing is protecting yourself, not instigating, not aggravating, why lie about the gun?
¾⅞ ⅜* ⅜!
Now, one of the facts in evidence is a gun was found. A gun was found presumably having fallen out of her pocket. As we know, it wasn’t in the car. It wasn’t in her purse. It fell right where they were fighting, right where he was trying to defend himself and getting her under arrest. It was never in the car. It was always in her pocket.
Now, why would she have it? Does that sound like someone on defense, somebody who goes in their house, ... could have stayed in the house—but comes back yelling, shouting and carrying an unregistered firearm? Does that sound like someone that’s on the defense to you? No, no. She was never on the defense. She was the aggressor the entire time.
Id. at 347-48, 355-56 (emphases added).
[30] This case essentially comes down to one person’s word against another’s. Because this case did not have overwhelming evidence and especially considering the State’s emphasis during closing argument on Snow’s “unregistered” gun, which was “literally against the law,” I believe that the gun had a probable impact on the jury’s decision, I would therefore reverse Snow’s convictions and remand this case for a new trial on the charges of Level 5 felony battery against a public safety official and Level 6 felony resisting law enforcement.